WESTINGHOUSE ELECTRIC CORPORATION, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, PLAINTIFF-APPELLANT, v. LOCAL No. 449 OF INTERNATIONAL UNION OF ELECTRICAL AND RADIO, MACHINE WORKERS, CIO, LOUIS BONYI, PRESIDENT, RUSSELL EMMONS, VICE PRESIDENT, AND JEAN BORICS, SECRETARY, ALL OF LOCAL No. 449, CHARLES KOVACS, AMERICO FIORI, ANGELO CALISTI AND CIO CENTRAL JERSEY INDUSTRIAL UNION COUNCIL, DEFENDANTS-RESPONDENTS.

Argued November 13, 1956, December 10, 1956—
Decided January 14, 1957.

Mr. *Walter F. Waldau* argued the cause for appellant (*Messrs. Minton, Dinsmore & Bohlinger* and *Messrs. Stryker, Tams & Horner,* attorneys; *Mr. H. Collin Minton, Jr.,* of counsel).

Mr. *Sol D. Kapelsohn* argued the cause for respondents Local No. 449, Louis Bonyi, Russell Emmons and Jean Borics (*Messrs. Kapelsohn, Lerner, Leuchter & Reitman,* attorneys).

Mr. *George Pellettieri* argued the cause for respondents Charles Kovacs, Americo Fiori, Angelo Calisti and CIO Central Jersey Industrial Union Council (*Messrs. Pellettieri & Rabstein,* attorneys).

The opinion of the court was delivered by

WACHENFELD, J. This appeal arises out of a labor injunction case in which the appellant, the Westinghouse Corporation, on three different occasions sought and obtained *ex parte* injunctive relief against the defendants. On full argument as to whether or not a preliminary injunction should be granted, the Chancery Division, after oral examination and cross-examination of witnesses offered on the appellant's behalf, discharged the orders to show cause and vacated the *ad interim* restraint.

Subsequently a supplemental complaint, again seeking to enjoin defendants from allegedly illegal picketing, was filed

by the appellant and a new order to show cause was issued without *ex parte* restraint. The defendants thereupon applied for and obtained an order directing the appellant to produce its president as a witness for the defendants at the final hearing, the appellant being given the right to demand the presence at the same time of any officers of the defendants it might desire to interrogate.

The defendants additionally, pending the return of the second order to show cause, moved to take the depositions on short notice of the plaintiff's president and its secretary and to require the appellant to produce "all minutes, books, records, paper writings, correspondence, instructions, directions, authorizations, documents and other records of the plaintiff corporation and its officers, directors, managing and authorized agents, dealing with, relating to or in any way appertaining to the negotiations between the plaintiff and all unions of employees in the plants operated by the plaintiff concerning the existing labor dispute between the plaintiff and said unions."

The appellant has some 50 plants in the country which are not all represented by the International Union of Electrical Workers, and at the time of defendants' motion it had settled its labor disputes with many of the 32 other unions at its other plants.

After granting the defendants' discovery motion, the court permitted the appellant to bring on for a hearing its motion to strike the notice to take the oral depositions of the officers aforementioned and to produce the specified documents and records. It also allowed the appellant to move to vacate the order directing the appearance of its president.

Subsequent to oral argument, the court, excepting in minor respects, denied the plaintiff's application to vacate or limit the defendants' short notice to take oral depositions and to produce documents and records. The court also refused to rescind its oral direction requiring the appearance of the president of the appellant company. The corporation requested leave to appeal from this unfavorable interlocutory disposition, a motion later abandoned. Its application for

a stay pending the allowance or denial of its appeal was denied by the trial court and by the Appellate Division of the Superior Court as well.

Unable to avoid what it obviously considered either the danger or the indignity of exposing its corporate president and records to examination, the appellant served a notice of motion for a voluntary dismissal of the proceedings. After oral argument by the respective parties, the court dismissed the action with prejudice, leaving open the question of counsel fees for which the defendants had applied at the hearing.

The parties were given ample opportunity to submit in writing their respective views for and against the propriety of taxing counsel fees. The court thereafter entered an order allowing to each of the two defense attorneys fees in the sum of $5,250, from which determination the appellant now appeals.

The sole issue to be decided is whether the Chancery Division had the power to tax counsel fees against the appellant corporation after the latter had voluntarily withdrawn its cause of action, which resulted in a dismissal with prejudice.

Appellant and respondents agree the allowance of counsel fees is essentially a matter of procedure and, therefore, exclusively within the province of the Supreme Court. *Bank of Commerce v. Markakos*, 22 *N. J.* 428 (1956); *State v. Otis Elevator Co.*, 12 *N. J.* 1 (1953); *John S. Westervelt's Sons v. Regency, Inc.*, 3 *N. J.* 472 (1950). The appellant contends, however, the grant here made is erroneous since there is no specific authorization for it under our rules governing civil procedure.

It is true that *R. R.* 4:55–7, "Counsel Fees," does not explicitly sanction the award in question. The only pertinent section reads:

"No fee for legal services shall be allowed in the taxed costs or otherwise, except: * * *
(d) As provided by these rules with respect to any action, whether or not there is a fund in court, but the authority, heretofore vested in the Court of Chancery for the granting of counsel fees in causes generally, is hereby superseded."

The immediate question, therefore, is whether the rules elsewhere provide for the taxation of counsel fees "with respect to any action."

The inquiry primarily turns upon the interpretation of *R. R.* 4:67–9, which states:

"The rules of court do not supersede *N. J. S.* 2*A*:15–51 to 58, inclusive, relating to labor disputes."

One of the sections of the Anti-Injunction Act, *N. J. S.* 2*A*:15–53, provides:

"No temporary restraining order or interlocutory injunction or permanent injunction shall be allowed, except upon condition that plaintiff shall first file with the court a bond or undertaking, in favor of the person or persons enjoined or restrained, in an amount to be fixed by the court issuing the restraining order or injunction, sufficient to secure to the person or persons enjoined their court costs, attorney and counsel fees taxed against the plaintiff, in the event that the injunctive relief sought is subsequently denied by the court or in the event that the order or judgment granting such injunctive relief is thereafter reversed by an appellate court."

Appellant asserts the Supreme Court did not intend by *R. R.* 4:67–9 to establish authority to grant counsel fees, under *N. J. S.* 2*A*:15–53, in labor injunction suits, and that the statute itself does not imply any authority to grant counsel fees to a defendant who succeeds in a labor injunction dispute.

The court below held otherwise, entertaining the opinion that there was authority inherent in the statute for the Chancery Division to award counsel fees where the plaintiff did not secure an injunction, and that since the appellant's complaint was dismissed with prejudice after an exhaustive hearing, the defendants were entitled to fees as compensation.

The relevant provision of the Anti-Injunction Act, *N. J. S.* 2*A*:15–53, we think, is quite clear. It recites no restraint shall be allowed unless the plaintiff posts a bond as security for counsel fees and costs of the persons enjoined "in the event that the injunctive relief sought is subsequently denied." Its plain meaning and fairest interpretation is that the

defendants restrained by such a suit shall be entitled to costs and counsel fees if the suit is ultimately unsuccessful. The intendment of the statute clearly covers the present plaintiff's failure to obtain relief.

The basic principle is part of a scheme to secure the right of labor to use all legal means in urging its position upon the employer. The Legislature apparently thought that if the employer were not subject to such liability for wrongful or unsuccessful attempts at restraint, by virtue of his superior capital position he could render impotent labor's efforts to defend itself with presumably limited resources against suits which might be designed to harass and embarrass.

The legislative idea was to guarantee a fairly equal legal position to labor by providing for counsel fees and costs when the effort made against it was unsuccessful. Thus, if industry were right, labor would receive nothing under the enactment, but if industry were wrong, labor would be protected through compensation, at least to the extent of the counsel fees and costs necessary to defend the suit adjudicated to have been wrongfully brought.

*R. R.* 4:67–9 specifically states that the rules of court do not supersede the provisions of the Anti-Injunction Act. Its historical development indicates a purpose to preserve intact and in full force all of the provisions of that act.

*R. R.* 4:67–9 was formerly *Rule* 3:65–9, entitled "Labor Disputes." As initially recommended to the Supreme Court, it read:

"These rules do not modify Chapter 15 of the Laws of 1941, as amended, relating to labor disputes."

Note is made that this proposal was fashioned after the federal rule in a similar situation with respect to the Norris-LaGuardia Act, 29 *U. S. C. A.* § 101 *et seq.* See *Federal Civil Rule* 65(e), 28 *U. S. C. A.*

The rule as promulgated on September 15, 1948 provided:

"3:65–9. Labor Disputes
The rules of court do not supersede Chapter 15 of the Laws of 1941, as amended, relating to labor disputes."

Thereafter there was a change in the rule to meet the legislative revision of *Title 2A* as follows:

"3:65–9. Labor Disputes
Rule 3:65–9 is amended to read as follows:
The rules of court do not supersede Article 8, Chapter 15 of N. J. S. Title 2A, relating to labor disputes. Amended January 1, 1952."

██ Inasmuch as the rules specifically provide they were not to supersede the provisions of the Anti-Injunction Act, by implication and effect they incorporate the provisions of the statute, as a counterpart of the court rules, to control the matters therein covered. The dominant control of the court in matters of procedure necessitated such an approach. The legislative intent was completely sustained through endorsement in our rules. By the customary principles of statutory construction, the statute in question augments the rule of court and gave authority to the court below to award counsel fees in a labor dispute in which the appellant, as provided for in the statute, did not prevail.

The right of the court below to grant counsel fees is affirmed.

On our own motion, however, we directed an inquiry into the proofs as to whether or not, under the facts and circumstances established, the counsel fees allowed were reasonable.

The fixing of counsel fees is always a matter of considerable difficulty. Some of the factors to be considered in arriving at such a determination are set forth in *State v. United States Steel Corp.*, 22 *N. J.* 341, 360–361 (1956), and *In re Bloomer's Estate*, 37 *N. J. Super.* 85 (*App. Div.* 1955), which follow closely *Canon* 12 of the *Canons of Professional Ethics.* For additional illumination see annotation at 143 *A. L. R.* 672 *et seq.*, "Attorney's Compensation —Amount."

██ The respondents concede that under no circumstances would the trial judge "be justified in fixing counsel fees in an amount which is purely punitive and which exceeds the reasonable value of the services rendered," while appellant

insists the compensation awarded "should in no event be larger than the bond approved by the Court," which was $1,000. Despite some supporting authority, we cannot agree with the latter contention. At the initiation of litigation it is impossible reasonably to foretell its length and scope and the amount of detail which might be encountered. Obviously, the suit may be unexpectedly difficult and protracted, involving delays and unanticipated expense. Under these circumstances, we can readily conceive that in many cases the security posted at the outset of litigation will prove inadequate upon its termination. The amount of the bond should not be the absolute *quantum* of the plaintiff's obligation when it fails to measure up to the relief apparently contemplated by the legislature.

We see no worthwhile contribution in setting forth the various items and details stressed both in the briefs and on oral argument. We have given the matter thorough and careful consideration and have concluded, keeping in mind that in adversary proceedings of this kind counsel fees, where allowable, are not designed to achieve complete indemnification, *Clements v. Clements,* 129 *N. J. Eq.* 350 (*E. & A.* 1941), that the award made below was excessive and that the allowance to each defense attorney should be reduced to $3,250.

With this modification, the judgment below, for the reasons herein expressed, is affirmed.

*For modification*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING and JACOBS—4.

*For reversal*—Justice OLIPHANT—1.