52 N.J. Super. 288 (1958)
145 A.2d 493
KATHERINE T. DeBOW, PLAINTIFF-RESPONDENT,
v.
LAKEWOOD HOTEL AND LAND ASSOCIATION, A NEW JERSEY CORPORATION, FOREST HOLDING COMPANY, A NEW JERSEY CORPORATION, LAKEWOOD COUNTRY CLUB, A NEW JERSEY CORPORATION, AND RAEF M. HADDAD, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1958.
Decided October 27, 1958.
*291 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Clarkson S. Fisher argued the cause for appellants (Mr. Edward F. Juska, attorney, and Mr. Fisher on the brief).
Mr. John M. Kaufman argued the cause for respondent (Messrs. Kaufman, Kaufman & Kaufman, attorneys; Mr. Samuel Kaufman, of counsel).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendants failed to deposit security for costs prior to the hearing of this appeal, as required by R.R. 1:2-10, 2:2-5. No valid excuse is offered for failing to do so. As we have remarked on a number of occasions, our rules of court are more than mere guides and admonitions. They were made to be complied with and should not lightly be disregarded. This will result in a dismissal of the appeal.
However, it is not inappropriate to refer to the central problem posed on the appeal because of the importance of the statute involved, N.J.S.A. 14:3-5, relating to the posting of security in stockholders' derivative actions. Brief reference to the background facts will provide the setting for our discussion.
Plaintiff's complaint contained six counts. The first three respectively dealt with the three defendant corporations, interrelated, in which plaintiff was a minority stockholder. Suing on behalf of herself and others similarly situated, she demanded judgment to compel an accounting and repayment by defendant Haddad of various sums which she alleged he had diverted to his own benefit from the several corporations, *292 each controlled by him. In the fourth count she alleged that she had bought certain shares in defendants Lakewood Hotel and Land Association and Lakewood Country Club; that she had delivered the certificates to Haddad with the request that he transfer these shares on the company books and issue new certificates to her, and that he had failed and refused to do so. She demanded that he be ordered to issue the certificates. The fifth count alleged that Haddad owed her certain monies and stock under a contract of employment, and the demand was that judgment be entered for the sum due and defendant ordered to issue the stock. Finally, the sixth count alleged that Haddad had induced plaintiff to accept as part payment for monies due her a certain house on land owned by defendant Lakewood Hotel and Land Association, and plaintiff demanded judgment ordering him, as president of the company, to execute the necessary deed.
Pursuant to a motion by the corporate defendants, an order was entered requiring plaintiff to furnish $1,000 security to each of them for "reasonable expenses, including counsel fees, which may be incurred by said defendants in connection with this action * * *."
Lakewood Hotel and Land Association filed a counterclaim for monies collected by plaintiff and not paid over to the company. Haddad counterclaimed for $1,000 allegedly due him from plaintiff.
On October 15, 1957 the trial court entered its amended judgment dismissing plaintiff's claim under the contract of employment (fifth count); ordered defendant Lakewood Hotel and Land Association to convey the real estate involved in the sixth count; directed defendant Haddad to assign to plaintiff (or otherwise vest title in her) the shares involved in the fourth count; and dismissed plaintiff's stockholder's derivative action against the corporate defendants (first three counts). The court also dismissed the counterclaims of Haddad and the Lakewood Hotel and Land Association. Additionally, it directed Haddad to convey a certain yacht to plaintiff, or in lieu thereof pay her $4,250. (We find no mention of the boat in the pleadings before us.) *293 Defendant corporations were ordered to pay $2,000 to the court-appointed certified public accountant. They thereafter applied for costs and counsel fees. The trial court refused to award costs, stating that plaintiff had won in part and lost in part, so that she was neither entitled to costs nor required to pay any. Referring to the statute, N.J.S.A. 14:3-15, the trial judge remarked that if it were in his power to award counsel fees, the most he would allow would be $1,000 (presumably to each corporation). However, he considered the stockholders' derivative action as being separate and apart from plaintiff's personal actions and the counterclaims against her. Concluding that he was bound by the rules, he denied defendants' application for counsel fees.
We do not agree with defendant corporations' contention that the application for costs and counsel fees was well-founded under N.J.S.A. 14:3-15 and our rules of court. N.J.S.A. 14:3-15 provides:
"In any action instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares * * * of such corporation having a total par value or stated capital value of less than five per centum (5%) of the aggregate par value or stated capital value of all the outstanding shares * * *, unless the shares * * * held by such holder * * * have a market value in excess of fifty thousand dollars ($50,000.00), the corporation in whose right such action is brought shall be entitled, at any stage of the proceeding before final judgment, to require the complainant or complainants to give security for the reasonable expenses, including counsel fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to law, its certificate of incorporation, its by-laws or under equitable principles, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. * * *" (Italics ours)
The applicable rules are R.R. 4:55-6 and R.R. 4:55-7. R.R. 4:55-6(a) provides in part:
"Except when express provision therefor is made either in a statute or in these rules * * * costs shall be allowed as of course to any prevailing party unless the court otherwise directs. * * *"
*294 R.R. 4:55-7, insofar as it may be pertinent to this matter, reads:
"No fee for legal services shall be allowed in the taxed costs or otherwise, except:

* * * * * * * *
(b) Out of a fund in court. The court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury.

* * * * * * * *
(d) As provided by these rules with respect to any action, whether or not there is a fund in court, but the authority heretofore vested in the Court of Chancery for the granting of counsel fees in causes generally, is hereby superseded.

* * * * * * * *."
The statute does not in terms direct the allowance of costs and counsel fees, but merely provides for a security out of which costs and counsel fees might thereafter be allowed within the court's discretion. The words "to which the corporation shall have recourse in such amount as the court * * * shall determine," can only mean if the court shall so determine. The statute was designed as a deterrent to stockholders' strike suits, Bookman v. R.J. Reynolds Tobacco Co., 138 N.J. Eq. 312 (Ch. 1946), but it cannot reasonably be construed as in itself assuring a defendant corporation that it will be reimbursed for costs and counsel fees. The statute merely made more potent the sanction that was available to the Chancellor  charging counsel fees against a bad faith suitor  by making the availability of such money a prerequisite to maintenance of the suit. Cf. Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), dealing with our 1954 law.
The very language of the statute, therefore, refutes the claim of defendant corporations that the trial court is required to award costs and counsel fees out of the security. But there is a further reason militating against the claim of these defendants. N.J.S.A. 14:3-15 was enacted in 1945 (c. 131). It was not revised after the adoption of our *295 new State Constitution of 1947, nor at the time of the revision of Titles 2 and 3 (L. 1951, 1st Spec. Sess., c. 344 and c. 345, effective January 1, 1952) or thereafter. The statute still has viability insofar as requiring the posting of security is concerned. Moldoff v. Mar-Dale Manor, Inc., 50 N.J. Super. 607 (Ch. Div. 1958). But even were the statute to be read as directing the allowance of costs and counsel fees  and we have held that its language clearly does not so provide  it would to that extent be superseded by R.R. 4:55-6(a) dealing with costs and R.R. 4:55-7 dealing with counsel fees. These rules were originally Rules 3:54-6 and 3:54-7, and were amended from time to time after 1948. The question of costs and counsel fees comes under the heading of procedural matters within the dominion of the Supreme Court. State v. Otis Elevator Co., 12 N.J. 1 (1953).
Defendant corporations take the position that R.R. 4:55-6(a) "contemplated statutory provisions for the imposition of costs in certain litigation." Reliance is had upon the first clause of the rule which reads, "Except when express provision therefor is made either in a statute or in these rules, * * *." Defendants can advance this claim only on the assumption that N.J.S.A. 14:3-15 provides for the allowance of costs and counsel fees. We have already stated that the statute clearly does not do so. But were the situation otherwise, the only way the statute could be waived is if the rule expressly preserved it, as was the case in Westinghouse Electric Corporation v. Local No. 449, etc., C.I.O., 39 N.J. Super. 438 (Ch. Div. 1956), affirmed 23 N.J. 170 (1957). That case centered upon R.R. 4:67-9, which specifically preserved the section of the Anti-Injunction Act, N.J.S. 2A:15-33, calling for the posting of a bond to secure costs and counsel fees when an injunction is to be granted. That rule provides that "The rules of court do not supersede N.J.S. 2A:15-51 to 58, inclusive, relating to labor disputes." The Supreme Court in Westinghouse clearly indicated that without such saving provision the rules would have completely governed and N.J.S. 2A:15-53 been superseded, but
*296 "Inasmuch as the rules specifically provide they were not to supersede the provisions of the Anti-Injunction Act, by implication and effect they incorporate the provisions of the statute, as a counterpart of the court rules, to control the matters therein covered. The dominant control of the court in matters of procedure necessitated such an approach. The legislative intent was completely sustained through endorsement in our rules. By the customary principles of statutory construction, the statute in question augments the rule of court and gave authority to the court below to award counsel fees in a labor dispute in which the appellant, as provided for in the statute, did not prevail." (23 N.J., at page 177)
Neither R.R. 4:55-6 nor 4:55-7 states that N.J.S.A. 14:3-15 is preserved, nor is there "express provision" in the statute permitting the court to allow costs or counsel fees. The trial court was entirely correct in dealing with defendants' application in the light of the rules only.
As the trial judge observed, plaintiff succeeded in part and was unsuccessful in part, and he therefore refused to allow costs to defendant corporations in the exercise of his discretionary power, a power possessed by the Chancery Division as successor to our former Court of Chancery and one that is preserved under R.R. 4:55-6(a). Believing that "the actions of the corporations and Mr. Haddad are certainly subject to some criticism by this court"  not sufficient, however, to result in a judgment in plaintiff's favor in her derivative action  the court did impose upon the corporations the obligation of paying the fee of the court-appointed certified public accountant.
Turning to the matter of counsel fees, there can be no question that the former jurisdiction of Chancery for granting such fees has been superseded, and the trial court today may, in a case like this, grant a counsel fee "in its discretion" only where there is a fund in court. R.R. 4:55-7(b). A number of cases have dealt with the meaning of "fund in court." Examination of them refutes defendants' theory that the security posted by plaintiff constitutes a "fund in court" within the meaning of the rule. The case that probably comes closest to the present one is Universal Indemnity Ins. Co. v. Caltagirone, 119 N.J. Eq. 491 (E. & A. 1936), which predates the present rules but nevertheless *297 applies the same criterion to an application for counsel fees  the existence of a fund in court. Caltagirone had recovered a judgment in tort against plaintiff's insured and a bus company. When execution against both was returned unsatisfied, he instituted an action at law against plaintiff. The company then sought to enjoin the suit, alleging that the unsatisfied return of the execution was the result of fraud. Plaintiff had, pursuant to an order of Chancery, posted security for the payment of the judgment for damages recovered. When the court held against the insurance company on the merits, Caltagirone sought counsel fees, claiming there was a fund in court. The Court of Errors and Appeals held that fees could not be awarded, since the money deposited by plaintiff was merely security, and not the subject of the litigation.
Many cases reiterate this requirement  that there is a fund in court available for counsel fees only if the fund is the subject of the litigation. See, e.g., Katz v. Farber, 4 N.J. 333, 344 (1950); Cintas v. American Car & Foundry Co., 133 N.J. Eq. 301, 304 (Ch. 1943), affirmed 135 N.J. Eq. 305 (E. & A. 1944); Baird v. Moore, 50 N.J. Super. 156, 176 (App. Div. 1958). Other cases have refused to allow counsel fees because the monies recovered did not constitute a "fund" within the control of the court. See Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 495 (1952), an action to rescind an illegal purchase of property by a public body, and Haines v. Burlington County Bridge Commission, 8 N.J. 539 (1952), where it was said (at page 542) that "The fact that property which is the subject of litigation is under the control of the court through the issuance of temporary restraints does not * * * create a `fund in court' out of which counsel fees may be allowed." In the present case, of course, the fund existed solely for the payment of costs and fees and was not in any way germane to the issues of the case.
A number of cases adopt the criterion of whether or not plaintiff has protected or created a fund for the benefit of a class. The theory here is that the benefited class should *298 equitably contribute to the expenses of its benefactor, and the simplest way to accomplish this is for his expenses to be deducted from the fund. See 6 Moore, Federal Practice, 1349 (1953); Milberg v. Seaboard Trust Co., 7 N.J. 236, 245 (1951); Katz v. Farber, above, 4 N.J., at page 344. However, in State v. Otis Elevator Co., above, 12 N.J., at page 10, the Supreme Court flatly stated that "one does not need to find a class to support the doctrine of a fund in court." At any rate, the theory has no application here. Regardless of the effect thereof when the complaining shareholder prevails, not only did defendant corporations not bring an action to benefit a class, but sought the very opposite when they resisted plaintiff's attempt to have Haddad turn over money and property allegedly belonging to them.
The corporate defendants also argue briefly that the boat as well as the property which was to have been turned over to plaintiff by the Lakewood Hotel and Land Association (or the insurance monies representing its loss by fire), and on which her attorneys were given a lien for services, constitute a fund in court within the meaning of the rule. This is specious. The judgment called for turning the property over to plaintiff through her attorneys. This no more constituted a fund in court than does any judgment paid by a defendant to a prevailing plaintiff. See Driscoll v. Burlington-Bristol Bridge Co., above. The trial court properly noted that plaintiff's derivative action was separate and apart from her personal actions and the two counterclaims. The court, of course, had the right to impress an attorney's lien on tangible property within its control, but this did not transmute the property into a fund in court. The right to impress such a lien is something entirely separate and apart from the theory of "a fund in court."
The appeal is dismissed.