WESTINGHOUSE ELECTRIC CORPORATION, A CORPORA-
TION OF THE COMMONWEALTH OF PENNSYLVANIA,
PLAINTIFF, v. LOCAL NO. 449 OF INTERNATIONAL
UNION OF ELECTRICAL AND RADIO, MACHINE
WORKERS, C. I. O., *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided February 23, 1956.

*Mr. H. Collin Minton, Jr.,* and *Mr. Arthur S. Lane* (*Messrs. Minton, Dinsmore & Lane,* attorneys) and *Mr. Walter F. Waldau* (*Messrs. Stryker, Tams & Horner,* attorneys), for plaintiff.

*Mr. George Pellettieri* and *Miss Ruth Rabstein* (*Pellettieri & Rabstein,* attorneys), for defendants Central Jersey C. I. O. Council, Charles Kovacs, Angelo Callisti and Americo Fiori.

*Mr. Sol D. Kapelsohn* (*Messrs. Kapelsohn, Lerner, Leuchter & Reitman,* attorneys), for defendants Local 449 I. U. E.-C. I. O., Louis Bonyi, Russell Emmons and Jean Borics.

SCHETTINO, J. S. C. Applications for counsel fees and costs are made by the attorneys for defendants and the award of counsel fees and costs are resisted by plaintiff.

Plaintiff filed a complaint on December 15, 1955 and sought injunctive relief under *N. J. S. 2A*:15–51 *et seq.* On an *ex parte* hearing on December 19, 1955 at Freehold preliminary injunction was granted after oral testimony was submitted by plaintiff. On December 20, 1955 a hearing was set for December 22, 1955.

On Thursday, December 22, 1955—which was the last day the court sat before Christmas recess—this court set aside its entire calendar in order to give plaintiff and defendants an opportunity to submit testimony. The hearing started about 10 :30 A. M. and continued until 8 :30 P. M. Plaintiff produced eight witnesses and numerous exhibits and defendants had exhibits marked for identification or in evidence. The stenographic record totals 244 pages for that one hearing.

At the conclusion of the hearing oral determinations were made encompassing the following:

"The essential acts of disorder by defendants, alleged and presented by plaintiff as prime justification for its application for preliminary relief, were intentionally incited by plaintiff. Testimony offered on behalf of plaintiff designed to show absence of responsibility on the part of the plaintiff for the events which led to the disorder referred to in the complaint, is not credible.

Plaintiff has not, in the matters and situations referred to in the complaint, acted in a manner which was discreet or which was intended to produce a condition of peace in the community.

The plaintiff has not acted in good faith in that it sought and secured *ex parte* and *ad interim* relief on incomplete factual statements presented to the court.

Plaintiff, has, within the intendment of New Jersey Statute *R. S.* 2A :15–54, failed to establish by adequate proofs presented in preliminary hearing that it has made proper reasonable effort to settle the labor dispute in question whether by negotiation or with the aid of available governmental machinery of mediation, or voluntary arbitration and that plaintiff's actions are arbitrary. Plaintiff failed in the preliminary hearing adequately to establish justification for the issuance of preliminary injunction."

It cannot be denied because of the vast importance of the subject matter that days and hours must have been spent by all counsel in preparing for this December 22, 1955 hearing. The enormity of the work, the pressures of time and importance, the quality of work demanded and accomplished— all lead to the conclusion that defendants' attorneys and

their entire facilities must have been used for this hearing. So they state in their affidavits of services and so I find.

On January 11, 1956 plaintiff obtained *ex parte* an order permitting it to file a supplemental complaint and on January 13, 1956 all counsel appeared in Freehold in order to fix a hearing date on the original and supplemental complaint. Over objection by defendants' counsel, the date was set for January 18, 1956 even though defendants' counsel had other commitments.

The transcript for that day contains the following:

"MR. PELLETTIERI: Your Honor, I have another motion. I think it is so germain to this present motion, if your Honor will hear me, I would like to make it now.

As Mr. Kapelsohn has indicated, this matter has been before your Honor and we had quite a hearing, standing from 10 o'clock in the morning until 9 or 9:30 in the evening of the same day which was, I believe, December 22nd last, that your Honor so graciously decided we would sit until we had cleaned the matter up because it was of such far reaching importance.

Now, your Honor will recall the testimony in that case, particularly when Mr. Kapelsohn was examining the witnesses who were beyond the local level but on the state level on negotiations. If your Honor will recall, the testimony was that no one knew who had the authority. One witness says that he only went in there and sat. They had these relay teams of persons who merely went in and negotiated, gave a negotiation by grace. They had no power, no authority. Did not discuss anything. They merely listened.

Now, it strikes me, your Honor, that an important question here to be determined is the good faith, the compliance with the statute in order to entitle them to any relief.

THE COURT: Well, it is not only to entitle them any relief, Mr. Pellettieri. It is in order to permit me to exercise any authority. It is a jurisdictional question.

MR. PELLETTIERI: I respectfully urge at this time, so that we will not be met with the type of testimony which we had before where your Honor had to glean from all of the facts, from the circumstantial facts the question of bargain in good faith. I at this time for that purpose make request and ask the court to compel the complainant, the plaintiff who is seeking relief to produce its officers, the President, Mr. Price, and the Vice President, Mr. Hadnett, who are the two men who have charge of the negotiations. They are the top level. I respectfully request that on the adjourned date that they be compelled to produce these witnesses in court so that we can examine them and question them on the jurisdiction of negotiating in good faith."

The application by defendants' counsel for an order directing plaintiff's president to appear at the January 18, 1956 hearing was granted over plaintiff's objections.

On January 17, 1956 plaintiff's counsel applied for a week's adjournment of the hearing. Because of the calendar situation the hearing date was adjourned to January 30, 1956.

On January 18, 1956 defendants' counsel obtained an order to take the depositions on January 26, 1956 of the president and secretary of plaintiff corporation. After service of the order plaintiff's counsel requested and received a date to argue a motion for an order directing that the depositions of the president and secretary be not taken; or that the scope of the matters in which the defendants may inquire be limited; or that defendants be compelled to comply with the requirements of *R. R.* 4:24–1 before the documents referred to in the notice for the taking of depositions be required to be produced; and that the court's order directing the attendance of the president as a witness for the defendants at the trial be set aside.

Its motion was based on three grounds; the matter was not relevant nor would it lead to the discovery of admissible evidence; defendants sought to discover matters which were privileged or in the nature of privileged matter and that the proceedings were calculated to annoy, embarrass and oppress the witnesses of the plaintiff. Service of the notice of this motion was made on defendants' counsel on Friday, January 20, 1956.

After oral argument on January 23, 1956 I made the following oral determinations:

"THE COURT: May I say with reference to the history of depositions, Messrs. Schnitzer and Wildstein very ably and thoroughly set forth the purposes of the rule to great length and cite from opinions by Justice Wachenfeld, Justice Brennan and the Chief Justice to the effect, 'Litigation is no longer to be thought of as a battle of wits, or a trial as a sporting event conducted for the benefit of the spectators,' which is a statement by Chief Justice Vanderbilt at induction of the Supreme Court, September 15, 1948, reprinted in the *Rutgers Law Review*, November 1948, Special Number page 69.

In *Lang v. Morgan's Home Equipment Corp.*, 6 *N. J.* 333. 338, Chief Justice Vanderbilt summarized the overall purpose of the

pretrial discovery-deposition rules, quoting in support thereof excerpts from the leading case of *Hickman v. Taylor*, 329 *U. S.* 495 [67 *S. Ct.* 385, 91 *L. Ed.* 451 (1947)], which dealt with the counterpart federal civil practice discovery rules. He said: 'Liberal procedures for discovery in preparation of trial are essential to any modern judicial system in which the search for truth in aid of justice is paramount and in which concealment and surprise are not to be tolerated.'

In *Tagliabue v. Twp. of North Bergen*, 9 *N. J.* 32, Mr. Justice Wachenfeld said: 'Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. Either party under appropriate circumstances, may compel the other to disclose relevant facts if, by so doing, prejudicial and inequitable surprises are eliminated and the truth is bared and made available.'

Similar words in *Schlossberg v. Jersey City Sewerage Authority*, 15 *N. J.* 360, by Mr. Justice Brennan.

At *page 426* of the *annotations*, *section 4*: 'Depositions of Corporate Parties: The deposition of a corporate party is given, upon notice, by a named or designated officer, director, managing or authorized agent who holds such office at the time when the deposition is taken, and may be used by an adverse party for any purpose at the trial.' Citing the case referred to by Mr. Pellettieri, *Cannon v. Virginia Stevedoring Corporation*, 14 *N. J. Super.* 248 (*Hudson County Court Law Div.* 1951). 'Failure of such officer, director, managing or authorized agent to appear pursuant to 'notice,' described in *R. R.* 4:20–1, subjects the corporate party to the sanctions of R. R. 4:27–4 which does not, however, include contempt. Subpoena, therefore, is ordinarily unnecessary to secure the attendance of a corporate party's officer, director, managing or authorized agent as distinguished from non-managing agents such as a mere foreman on the job or other agent or employee.'

[*Annotations* to *R. R.* 4:16–2, *Scope of Examination*, *section 3, page* 433] 'Object and Analysis of Rule. The purpose of the rule is to prescribe the scope of discovery by depositions, and to do so in broad terms in aid of maximum pretrial disclosure of facts, as a means of achieving substantive justice. *Callahan v. National Lead Co.*, 4 *N. J.* 150. As was stated by Justice Wachenfeld in *Tagliabue v. Twp. of North Bergen*, 9 *N. J.* 32. "Mutual knowledge of all—" The court has already quoted that.

[*Page* 434] 'Objections to Depositions Deemed Frivolous. The Rule obviates four grounds under the former practice for objecting to the taking of depositions as distinguished from the use of depositions at trial.

'1. That the examining party is seeking to pry into his adversary's case or defense, rather than seeking disclosure of facts to support his own claim or defense. *R. R.* 4:16–2 provides that the "deponents may be examined regarding any matter * * * whether it relates to the claim or defense of the examining party or to the claim or defense of any other party." The rationale for this provision is summed up in *Bead Chain Manufacturing Co. v. Smith*, 1 *N. J.* 118,

where Chief Justice Vanderbilt said: "The presentation of the truth to the court is paramount; it must proceed unimpeded and unhampered despite claims of prying * * *." '

'4. That the examining party is conducting a 'fishing expedition.' In *Bead Chain Manufacturing Co. v. Smith* [the Chief Justice said] the objection that the examining party is conducting a 'fishing expedition' was overruled.' * * * 'Under the rule it is of no avail to raise the familiar cry of "fishing expedition." The very object of the rule is to enable a party to obtain the details of his adversary's evidence.' * * * 'No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case.' * * * 'As a matter of fairness if there appears to be reasonable probability or even possibility that there may be fish in the pond, there is no reason why the litigant should not be permitted to endeavor to catch them.'

With reference to the use of depositions, *page 474*, 'All or part of a deposition of an adverse party (or of his representative) may be used at the trial either (a) as substantive or original evidence to support the offering party's case or defense without regard to the deponent's presence at the trial on the ground that it constitutes no more than an admission or (b) for the purpose of impeaching the credibility of the adverse party's testimony.'

'Use of Adverse Party's Deposition as Substantive Proof (Subdivision "b")'—*page 481*: 'Since subdivision "b" deals with the use of an "adverse" party's deposition, the problem of identifying an adverse party as distinguished from other parties or witnesses, becomes material.' There is no question in our case that Mr. Price is, by definition, a party, as a corporate officer of Westinghouse.

[*Annotations* to *R. R.* 4:20–1, *section* (6) (C) (6), *page* 549] 'Requesting and Compelling a Party to Produce Documents. Where the deposition is to be taken within this State, a subpoena *duces tecum*, although permitted by *R. R.* 4:46–4, need not be served upon a party in order to compel him to produce documents, books, records or tangible things not privileged, which constitute or contain evidence relating to any of the matters within the scope of examination permitted by *R. R.* 4:16–2 and which are in his possession, custody or control. *Cannon v. Virginia Stevedoring Corp.*, 14 *N. J. Super.* 248,' etc. 'See also discussion in 4 *Moore's Federal Practice* (*2d ed.*) * * * The rationale in this is that since a subpoena to take a deposition within this State is not necessary where a party is concerned, * * * neither should a subpoena *duces tecum* be obligatory. *Cf. R. R.* 4:24–1; *R. R.* 4:46–4. Such production may be accomplished by inserting in the notice of examination a request or direction to the party to be examined to produce the documents designated therein.' Citing the *Cannon* case. 'Of course, if the party willfully fails to produce the enumerated documents after being served with a proper notice, contempt proceedings will not lie as in the case of service of a subpoena *duces tecum*. *Cf. N. J. S.* 2A:81–15. The only remedy for such non-compliance

is an application to the court, on notice, to impose the sanctions specified in *R. R.* 4:27–4, namely to "strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or take such other action as it deems advisable." '

[*Page* 551] 'Corporate, Partnership and Association Parties: The deposition, of a corporation or partnership or association which is a *party*, is given upon notice by a named or designated officer, director, managing or authorized agent of the party. \* \* \* Service of a subpoena is not necessary in order to accomplish attendance at the deposition examination because, under the provisions of *R. R.* 4:27–4, the named or identified officer, director, managing or authorized agent is treated as the equivalent of the "party" whose appearance is made obligatory.'

And the reference to the work of Schnitzer and Wildstein is on *page* 574 and continues to 575 and was read previously on Mr. Waldau's argument, and that is as to a plaintiff coming into this State complaining about the taking of depositions by a party whom he has brought into this court.

The court's determinations on this application are that the place of hearing shall be held in this court room instead of as designated previously at the office of Mr. Pellettieri; that the time shall be the same.

With reference to striking or not compelling the appearance of Mr. Price, the court rules against Mr. Waldau's application on the authorities cited by the Court. Mr. Price is compelled to be present and submit to the taking of depositions.

With reference to the application to strike the notice served for the production of documents, on the authorities cited by Schnitzer and Wildstein and also specifically on the *Cannon* case, opinion by Judge Tennanbaum, the court feels it cannot exercise its discretion to eliminate such notice. It is limited, however, in terms to the reference made by Mr. Kapelsohn to all documents or papers pertaining only to the strike negotiations started chronologically on October 15th or 16th, 1955, to the present time. I am sure and confident that Mr. Waldau and Mr. Lane, eminent counsel that they are, will protect their clients against any disclosure of confidential matters, and the court will make a ruling if the court is requested to do so.

The reference to Mr. Price of course also applies to Mr. Huggins. The court only makes this comment with reference to argument Number One and cases cited by Mr. Waldau thereunder. The court can agree wholeheartedly with all the contentions made by Mr. Waldau, but it finds that the court and Mr. Waldau do not agree on one interpretation. Mr. Waldau wants to start his case from the authority of the negotiating committee. The court feels that the defendants have a right to examine into the authority or restrictions, if any, given to the negotiating committee in order to assist this court in determining whether or not the plaintiff has fulfilled the requirements of *N. J. S.* 2A:15–54: 'No restraining order or in-

junctive relief shall be granted to any plaintiff who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.'

The court's interpretation of the facts as they are presently before it on the pleadings and on affidavits admittedly differ from Mr. Waldau's. The Court's determination is based on its interpretation of how far the defendants can go into the testimony of the plaintiffs with reference to the reasonable effort to settle such dispute and other phases of this statute.

The question of burdensome notice or burdensome order is covered by the Chief Justice in his opinion in *Lang v. Morgan's Home Equipment Corp.*, 6 *N. J.* 333, and I can see no factual distinction between a corporate defendant Morgan in that case bringing its records down from Boston and Mr. Price's requirement to produce his records from Pittsburg.

In passing, counsel, the court would like to refer to these sections, these references in 20 *American Jurisprudence* 187: 'It is well settled that if a party fails to produce the testimony of an available witness on a material issue in the cause, it may be inferred that his testimony, if presented, would be adverse to the party who fails to call the witness.'

'The only inference that may be drawn from failure to produce available witnesses or evidence is that the testimony or the evidence would not have been favorable to the party omitting to produce such witnesses or evidence.'

I do not assume that that is the court's determination if Mr. Price is not produced, but I suggest that that thought be borne by counsel as well as the case of *Ames v. N. J. Franklinite Co.*, 12 *N. J. Eq.* 66, in which case the defendant did not appear and the court felt there could be some inference as to why the defendant did not appear. It however is admitted in all the authorities that that is not evidence to sustain the defendant's contention that such an inference cannot be used to sustain the positive contention of the defendant but may be considered by the court in determining its conclusions on the plaintiff's case."

The preparations of law memoranda and for oral argument consumed counsels' entire week-end under the terrific handicaps of time and pressure. The affidavits effectively state the hardships and I find as counsel claim.

Defendants' counsel prepared for the January 26, 1956 deposition hearing and were notified just a few minutes before the hearing by plaintiff's counsel that plaintiff refused to permit its president to appear.

On January 27, 1956 at Freehold plaintiff moved to dismiss its complaint without prejudice. Defendants objected and contended it should be dismissed with prejudice. Complaint was dismissed with prejudice.

Prior to dismissal defendants' counsel moved for counsel fees and costs. Counsel were given an opportunity to submit memoranda of law.

*N. J. S. 2A*:15–53 provides in part:

"No temporary restraining order or interlocutory injunction or permanent injunction shall be allowed, except upon condition that plaintiff shall first file with the court a bond or undertaking, in favor of the person or persons enjoined or restrained, in an amount to be fixed by the court issuing the restraining order or injunction, sufficient to secure to the person or persons enjoined their court costs, attorney and counsel fees taxed against the plaintiff, in the event that the injunctive relief sought is subsequently denied by the court or in the event that the order or judgment granting such injunctive relief is thereafter reversed by an appellate court."

Plaintiff argues that in 1941 when the Anti-Injunction Act was passed (*N. J. S. 2A*:15–51 *et seq.*), allowance of counsel fees and costs was covered by *R. S.* 2:29–131, 132, and that these statutory provisions were repealed by *L.* 1951, *c.* 344; and further argues that in *State v. Otis Elevator Co.*, 12 *N. J.* 1 (1953), the Supreme Court held that authority for the allowance of counsel fees is to be found exclusively in the rules of the Supreme Court.

The Supreme Court rules, *R. R.* 4:67–9, provides:

"The rules of court do not supersede *N. J. S. 2A*:15–51 to 58, inclusive, relating to labor disputes."

The only reasonable construction of this provision of the rules of our Supreme Court is that it feels that labor disputes create litigation peculiar to the subject matter; that such litigation has been completely considered by two coordinate branches of our government—the Legislature and the Governor—and that the Supreme Court is satisfied with their treatment of a delicate subject even in phases which might be said to belong to the Supreme Court. By this rule the

Supreme Court effectively states that labor disputes are to be tried in accordance with legislative mandates.

I conclude, therefore, that counsel fees and costs—if any— are not covered by *R. R.* 4:55–6, 7, but by *R. R.* 4:67–9 and by *N. J. S.* 2A:15–53.

In *Sperry and Hutchinson Company v. Margetts*, 15 *N. J.* 203, 209 (1954), the Supreme Court said:

"The intention of the lawgiver is taken or presumed according to what is consonant to reason and good discretion. The particular words are to be made responsive to the reason and spirit of the enactment. *Wright v. Vogt*, 7 *N. J.* 1 (1951). The purpose of construction is to bring the operation of the statute within the apparent intention of the Legislature. *Nagy v. Ford Motor Co.*, 6 *N. J.* 341 (1951). When the general intent is found, general words may be restrained accordingly, and those of narrower significance expanded to effectuate that intent. *Glick v. Trustees of Free Public Library*, 2 *N. J.* 579 (1949). The true meaning of any clause or provision ordinarily is that which best comports with the subject and general object of the act."

And in *Maritime Petroleum Corp. v. Jersey City*, 1 *N. J.* 287, 298 (1949), Mr. Justice Heher for the Supreme Court said:

"The true meaning of any clause or provision ordinarily is that which best comports with the subject and general object of the act. *Lewis' Sutherland Statutory Construction* (2d ed.), sec. 348."

And in *Caputo v. Best Foods, Inc.*, 17 *N. J.* 259, 264 (1955), Mr. Justice Heher said:

"It is not 'the words of the law, but the internal sense of it that makes the law.' *Eyston v. Studd*, 2 *Plowd.* 459; 75 *Eng. Repr.* 695 (1574). The reason of the law, *i. e.*, the motive which led to the making of it, is one of the most certain means of establishing the true sense of the words. *Valenti v. Board of Review of Unemployment Compensation Commission*, 4 *N. J.* 287 (1950) ; *In re Roche's Estate*, 16 *N. J.* 579 (1954). In early English language usage, this was deemed the construction and application of the law according to the 'equity of the statute'; but it will be seen from the case cited that, as is true of the present-day canons of interpretation, it was from the beginning a rule in aid of the legislative intention within the four corners of the expression, considered in the context of its socio-economic setting, *i. e.*, the sense and reason

450

of the law. *Sutherland, Statutory Construction (3d ed), sec.* 6001 *et seq.* The intention emerges from the spirit and policy of the statute rather than the literal sense of particular terms."

Plaintiff's contention is made to appear most unreasonable when one considers that under its theory the statutory requirement of a bond as security compels plaintiff to perform a useless and, at times, an expensive act. The Legislative and Executive Branches of government cannot be so charged.

 Guided by these well established rules of statutory construction, I conclude that inherent in the above quoted statute is authority for and obligation on this court to award counsel fees and costs against a plaintiff who does not prevail in a labor dispute. Plaintiff was denied relief after an exhaustive hearing on December 22, 1955 and its complaint was dismissed with prejudice. It did not get the relief it sought against defendants. Defendants' counsel are therefore entitled to counsel fees and costs.

 We come, then, to the always difficult question of what is a reasonable counsel fee. In *Township of Teaneck, Bergen County v. Mercer*, 124 *N. J. L.* 120, 122 (*E. & A.* 1940), Mr. Justice Case said:

"We consider, however, that the measure of an allowance is not the amount which the owner has paid or that which in strict law he could upon suit be obliged to pay the attorney or other claimant, but rather that which, under all of the circumstances, is reasonable."

And in *Texas Pipe Line Co. v. Snelbaker*, 33 *N. J. Super.* 11, 15 (*App. Div.* 1954), the court stated:

"It may be that in some cases the award of counsel fees may be larger than could be expected from clients, *Hutchinson Box Board & Paper Co. v. Van Horn*, 299 *F.* 424 (*C. C. A.* 8 1924), or it may be smaller, *McWilliams, Jr., Co., Inc. v. Missouri-Kansas Pipe Line Co.*, 21 *Del. Ch.* 308, 190 *A.* 569 (*Ch.* 1936). But we must keep in mind that apart from contract, statute or rules of court a litigant must pay his own counsel fees. *Hempstead v. Meadville Theological School*, 286 *Pa.* 493, 134 *A.* 103, 49 *A. L. R.* 1145."

What are some of the criteria for determining the amount of counsel fee to be awarded? In *In re Bloomer*, 37 *N. J.*

*Super.* 85, 94 (*App. Div.* 1955), Judge Goldmann made the following suggestions in effect:

(1) The importance of the dispute or jeopardy as to which professional services were made necessary; (2) The nature and extent of the jeopardy or risk involved or incurred; (3) the nature, extent and difficulty of the services rendered; (4) the experience and legal knowledge required, and the skill, diligence, ability and judgment shown; (5) the time necessarily spent by the attorney in the performance of his services; (6) the results obtained; (7) the benefits or advantages resulting and their importance; (8) any special circumstance, including the standing of the attorney for integrity and skill; and (9) the overhead expense to which the attorney has been put.

In addition, we might well consider the purchase power of today's dollar, the increased costs of operating a law office, the high income tax rates, and the exhaustion of the available work hours an attorney has which are consumed by emergency cases of this type.

██ Mr. Pellettieri and Mr. Kapelsohn have filed separate affidavits of services. I believe the statements of services performed. I acknowledge the very high standing every attorney who appeared in this case possesses in the general practice of law and his recognized expertness in the special field of labor disputes, and these well earned reputations are considered in determining the awards.

Each attorney for the defendants has requested counsel fees of $6,000 and costs covering disbursements as well as ordinary court costs. There is awarded to Mr. Pellettieri and his firm for counsel fees and costs, $5,250. There is awarded to Mr. Kapelsohn and his firm for counsel fees and costs $5,250.

Submit orders.