162 N.J. Super. 114 (1978)
392 A.2d 243
WESTFIELD CENTRE SERVICE, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND JAMES GALLIGAN, INDIVIDUALLY AND AS PRESIDENT OF WESTFIELD CENTRE SERVICE, INC., PLAINTIFFS,
v.
CITIES SERVICE OIL COMPANY, A DELAWARE CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 2, 1978.
*116 Mr. Vincent K. Loughlin for plaintiffs (Messrs. Johnstone & O'Dwyer, attorneys).
Mr. Andrew S. Polito for defendant (Messrs. Mattson, Madden & Polito, attorneys).
ACKERMAN, J.S.C.
This is a supplemental decision to this court's previous determination in this matter reported at 158 N.J. Super. 455. In that opinion the court held that defendant's actions had violated the New Jersey Franchise Practices Act, N.J.S.A. 56:10-1 et seq.; that plaintiffs had been successful in obtaining an injunction against the improper termination of the franchise, and that plaintiffs were therefore entitled to reasonable counsel fees pursuant to *117 N.J.S.A. 56:10-10. Id. at 484-485. The complete factual background of this case, as well as the legal reasoning underlying the court's ultimate determination, is set forth at length in the earlier opinion, and will not be discussed here except insofar as is directly relevant.
Plaintiffs seek total counsel fees of $41,080 for 668-1/4 hours and costs and disbursements of $3,280.46.
N.J.S.A. 56:10-10 provides:
Any franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees.
Defendant initially contends that this provision is unconstitutional in that it allows counsel fees to a successful franchisee, but not to a successful franchisor. Defendant argues that this constitutes an unlawful classification which denies the franchisor equal protection and equal access to the courts.
Neither defendant nor plaintiffs cite any New Jersey case law on this subject. Defendant relies chiefly on the United States Supreme Court case of Gulf, Colo. & Santa Fe Ry. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666 (1897), which defendant describes as the "leading case in the United States concerning the constitutionality of unilateral awards of attorneys' fees."
In Ellis the Court struck down a statute providing that any person with a valid claim against a railroad for $50 or less might litigate same and, if successful, recover up to $10 in attorney's fees. Mr. Justice Brewer, writing for the court, began his discussion by noting that the railroads "do not enter the courts upon equal terms. They must pay attorneys' fees if wrong; they do not recover any if right; while their adversaries recover if right and pay nothing if wrong." 165 U.S. at 151, 17 S.Ct. at 256, 41 L.Ed. at 667. Had this distinction been the sole basis for the court's decision, *118 this court agrees that defendant would be on firm ground. The Ellis court's subsequent language, however, makes it clear that not every provision for the unilateral award of counsel fees offends equal protection.
Thus, the court noted that every debtor should pay its debts and stated that "there might be no impropriety in giving to every successful suitor attorneys' fees." 165 U.S. at 157, 17 S.Ct. at 257, 41 L.Ed. at 669. The court also noted that railroads alone of all corporations were required to bear this burden, so that "the rule of equality is ignored." 165 U.S. at 157, 17 S.Ct. at 257, 41 L.Ed. at 669. More significantly for present purposes, the court rejected the argument that the statute was based on certain special duties imposed on railroads with this language:
While this is an action for stock killed, the recovery of attorneys' fees cannot be sustained upon the theory just suggested. There is no fence law in Texas. The legislature of the state has not deemed it necessary for the protection of life or property to require railroads to fence their tracks, and as no duty is imposed, there can be no penalty for non-performance. [165 U.S. at 158, 17 S.Ct. at 258, 41 L.Ed. at 669]
The court went on to state that this was "not a statute for the protection of particular classes of individuals supposed to need protection, but for the punishment of certain corporations on account of their delinquency." 165 U.S. at 159, 17 S.Ct. at 258, 41 L.Ed. at 669.
A fair reading of Ellis, then, reveals that the statute in that case was held invalid not because it awarded counsel fees to successful plaintiffs but not defendants, but because it arbitrarily awarded counsel fees in suits on debts against railroads but no other corporations. In the absence of some special duty imposed on railroads, the classification lacked a rational basis.
That this is a proper reading of Ellis is demonstrated by the case of Atchison, Topeka & Santa Fe R.R. v. Matthews, 174 U.S. 96, 19 S.Ct. 609, 43 L.Ed. 909 (1899), decided two years after Ellis. At issue in Matthews was a *119 Kansas statute which provided for reasonable attorney's fees to a successful plaintiff, but not defendant, in an action for damages by fire caused by the operation of a railroad. Mr. Justice Brewer, again writing for the Court, found the statute to be valid, saying:
The purpose of the statute is not to compel the payment of debts, but to secure the utmost care on the part of railroad companies to prevent the escape of fire from their moving trains * * *. Its monition to the railroads is not, "pay your debts without suit or you will, in addition, have to pay attorney's fees"; but rather, "see to it that no fire escapes from your locomotives, for if it does you will be liable, not merely for the damages it causes, but also for the reasonable attorney's fees of the owner of the property injured or destroyed." [174 U.S. at 98, 19 S.Ct. at 610, 43 L.Ed. at 910]
Ellis, the court held, was inapplicable because the Kansas legislature had made a reasonable classification in including "all corporations engaged in this business of particular hazard." 174 U.S. at 102, 19 S.Ct. at 611, 43 L.Ed. at 912.
The true basis for the Ellis decision was made even more explicit in Missouri, Kan. & Tex. Ry. v. Cade, 233 U.S. 642, 34 S.Ct. 678, 58 L.Ed. 1135 (1914). In upholding a statute which provided for attorney's fees of up to $20 to any successful plaintiff with one of a number of specified claims against any defendant, the Supreme Court said that the Ellis statute "was adjudged to be invalid because it singled out a particular class of debtors, and imposed this burden upon them, without any reasonable ground for the discrimination." 233 U.S. at 649, 34 S.Ct. at 680, 58 L.Ed. at 1138. Unlike that statute, the statute in Cade
* * * applies only to certain kinds of claims, but these cover a wide range, and do not appear to have been grouped together for the purpose of bearing against any class or classes of citizens or corporations. Unless something of this sort did appear, we should not be justified in holding the act to be repugnant to the 14th Amendment. It is a police regulation designed to promote the prompt payment of small claims and to discourage unnecessary litigation in respect to them. [233 U.S. at 649, 34 S.Ct. at 680, 58 L.Ed. at 1138]
*120 The court also held that the award of fees solely to successful plaintiffs did not render the statute invalid:
If the classification is otherwise reasonable, the mere fact that attorneys' fees are allowed to successful plaintiffs only, and not to successful defendants, does not render the statute repugnant to the "equal protection" clause * * *. Actor and reus differ in their respective attitudes towards a litigation; the former has the burden of seeking the proper jurisdiction and bringing the proper parties before it, as well as the burden of proof upon the main issues; and these differences may be made the basis of distinctive treatment respecting the allowance of an attorney's fee as a part of the costs. [233 U.S. at 650, 34 S.Ct. at 681, 58 L.Ed. at 1138]
Defendant cites a number of other cases from other states holding invalid various statutes providing for the award of attorney's fees to successful plaintiffs but not defendants. In the court's judgment, it is unnecessary to discuss these cases, especially since it appears that there are as many or more cases upholding such statutes. See, generally, the cases collected in Annotation, "Validity of Statute Allowing Attorney's Fee to Successful Claimant but not to Defendant, or Vice Versa," 73 A.L.R.3d 515 (1976). Particularly relevant is the following language summarizing the cases involving the unilateral award of attorney's fees to successful plaintiffs in suits by shippers against carriers:
* * * [S]uch legislation was almost always upheld against attack, generally on the ground that the parties were of unequal strength and the plaintiffs could not afford to bring the action against the railroad, thus encouraging the railroads to refuse to settle without suit; the courts generally pointed out that the public had an interest in the manner in which the carrier operated, and that it was in the public interest that suits by small shippers against the large carriers be placed upon a practicable basis. [§ 2(a), at 522-523]
See cases collected at id. § 12(a).
In the instant case the court finds that the distinction drawn in the statute is rational, and therefore valid. Initially, the parties are referred to the discussion of the heavy presumption in favor of the validity of legislative acts in the *121 court's previous decision in this matter. 158 N.J. Super. at 476-477. The parties are also referred to the court's discussion of the purposes of the Franchise Practices Act and the economic realities underlying it. Id. at 469-475.
In view of these factors the court finds that the Legislature could have determined that enforcement of the act was strongly in the public interest, and that in light of the grossly unequal economic status of the parties, franchisees might be discouraged from seeking to enforce their rights in court if required either to bear the cost of litigation themselves, or to reimburse defendants for counsel fees in the event that the final decision was in defendants' favor.
Furthermore, a franchisee whose rights under the act are violated may only vindicate those rights by litigation. In contrast, a franchisor seeking to terminate for good cause need bring no litigation to do so; it need merely terminate the franchise. The full burden of actually bringing suit is always upon the franchisee. There is, as noted, a strong public policy in this State, as expressed by the Franchise Practices Act, against the unjustified termination of franchises. In suing under the act the franchisee vindicates not only its own rights, but the public policy of this State as well. It is therefore entirely appropriate that the franchisor found to have violated this public policy be assessed the costs incurred by the franchisee as the result of such violation.
The court also notes that the act does not discriminate among franchisors. All individuals, corporations and other entities seeking to do business through the franchise method are subjected to equal liability. The act is therefore tailored to a precise class subject to special regulation because of the distinctive nature of its mode of operation.
In summary, the court holds that in light of the differing economic abilities to litigate of franchisees and franchisors, the necessity of litigation by franchisees, but not franchisors, to enforce their rights under the act, the strong public policy in favor of enforcement of the act by private litigation, the *122 special nature of the franchise relationship and the act's equal treatment of all franchisors, the act does not deny franchisors the equal protection of law.
Defendant also argues that the provision interferes with its free and equal access to the courts. The applicable principles in matters such as the instant one were set forth in the case of Life & Cas. Ins. Co. v. McCray, 291 U.S. 566, 54 S.Ct. 482, 78 L.Ed. 987 (1934). The statute in McCray imposed attorney's fees plus a 12% surcharge upon damages against an insurer for wrongful failure to pay benefits. In upholding the statute against a claim that its provisions constituted "a clog upon the privilege of access to the courts," 291 U.S. at 572, 54 S.Ct. at 485, 78 L.Ed. at 991, Mr. Justice Cardozo said for the Court:
One who refuses to pay when the law requires that he shall, acts at his peril, in the sense that he must be held to the acceptance of any lawful consequences attached to his refusal. It is no answer in such circumstances that he has acted in good faith * * *. The price of error may be so heavy as to erect an unfair barrier against the endeavor of an honest litigant to obtain the judgment of a court. In that event, the Constitution intervenes and keeps the courtroom open * * *. On the other hand, the penalty may be no more than the fair price of the adventure * * *. In that event, the litigant must pay for his experience, like others who have tried and lost. [291 U.S. at 574-575, 54 S.Ct. at 486, 78 L.Ed. at 992]
Unilateral attorney's fee provisions have in most cases been upheld against "open courts" arguments. See cases collected at Annotation, supra, § 9(b).
In the instant case the franchisor is not barred from presenting its defense. Rather, it is required to run the risk of being assessed for counsel fees if that defense is not sustained. The Legislature may well have determined that the comparable economic positions of the parties were such that free access to the courts for the franchisee could only be guaranteed if counsel fees could be awarded to successful plaintiffs. The franchisor is assessed no additional penalties for making an unsuccessful defense beyond what has been deemed necessary to ensure enforcement of the act. The court *123 therefore holds that the counsel fees provision is reasonable and not unduly burdensome to the unsuccessful franchisor, and is thus not invalid as a barrier to free access to the courts.
Having determined that N.J.S.A. 56:10-10 is constitutional insofar as it awards counsel fees to a successful plaintiff, the court must now turn to the appropriateness of the particular fee sought in this case.
The initial contention raised by defendant is that plaintiffs were only partially successful in this matter, and are therefore entitled to only a proportionate share of counsel fees. As will be recalled, plaintiffs in this case initially sought injunctive relief, compensatory and punitive damages, recovery based on unjust enrichment, and attorney's fees and costs of suit. This court ultimately found for defendant on the issues of damages and unjust enrichment, based on the court's determination that there was no causal relationship between any acts of defendant and plaintiff Galligan's eventual loss of his business; that Galligan recouped his entire original investment, negating unjust enrichment, and that defendant's actions were not motivated by malice or bad faith. See 158 N.J. Super. at 466. The court also determined, however, that defendant's proposed actions would have violated the act, and that plaintiffs were therefore entitled to the injunctive relief originally obtained to prevent defendant from doing the forbidden acts.
Defendant contends that since plaintiffs were only successful to a limited extent, defendant should correspondingly be held liable for a proportionately smaller amount of counsel fees. Plaintiffs argue that they are entitled to full counsel fees because they were successful as to the core issue of the case, that is, the legality vel non of defendant's proposed actions.
Defendant cites several cases for the proposition that counsel fees are only recoverable to the extent of plaintiff's success. Thus, in Younger v. Glamorgan Pipe & Foundry Co., 418 F. Supp. 743 (W.D. Va. 1976), vacated on other *124 grounds, 561 F.2d 563 (4 Cir.1977), plaintiffs brought a civil rights action alleging over 15 specific acts of racial discrimination. Plaintiffs prevailed, however, as to only one of those allegations, the charge of an improper bidding system. The court noted that "a substantial portion of the time spent by plaintiffs' attorneys was devoted to issues which they later chose to drop or as to which they did not prevail on the merits." 418 F. Supp. at 791. The court concluded (at 792) that "As to those aspects of the case upon which plaintiffs did not prevail, the court is of opinion no award of attorneys' fees should be made. As such, time expended in pursuit of these charges should be excluded from consideration in arriving at a reasonable award for attorneys' fees."
Similarly, in Swanson v. American Consumer Industries, Inc., 517 F.2d 555 (7 Cir.1975), the court said that:
The fact that [plaintiffs] failed to prevail on several of the issues they raised is entitled to weight in the determination of the appropriate amount of the fee award, as conversely, an attorney's success on all or most of the important issues in a case would likewise be entitled to weight in determining his fee. [at 563]
Accord, Taylor v. Safeway Stores, Inc., 524 F.2d 263, 273 (10 Cir.1975); Williams v. General Foods Corp., 492 F.2d 399, 408-409 (7 Cir.1974).
Plaintiff cites in response, Pitchford Scientific Instruments Corp v. Pepi, Inc., 440 F. Supp. 1175 (W.D. Pa. 1977), a private antitrust action. In that case plaintiff apparently succeeded in showing certain illegal acts on defendants' part, but was denied recovery on appeal with regard to some issues based on a failure to prove damages. The court did not deem it appropriate to reduce the statutory award of counsel fees, saying:
[I]t seems clear that a reasonable and prudent antitrust lawyer * * * would have litigated these issues in the reasonable exercise of professional judgment. There was sufficient merit in the points raised to justify their inclusion in the case. They were not frivolously *125 argued merely for harassment or vexation, or for purposes of delay. [at 1178]
The court in Pitchford, then, appears to have held that a plaintiff who is in large part successful may recover counsel fees under the statute for all claims which are not interposed solely for harassment and delay.
The court believes that N.J.S.A. 56:10-10 should be construed along the lines suggested in the cases cited by defendant. As defendant points out, the act provides for an action by a franchisee against a franchisor "to recover damages sustained by reason of any violation of this act and, where appropriate," to obtain injunctive relief. "If successful," the franchisee is entitled to costs, including attorney's fees. Plainly, only a successful plaintiff is entitled to fees. Where a party sets out to prove it was damaged by reason of the franchisor's violation of the act, and fails to prove this to the satisfaction of the court, that party has not been successful with regard to that claim.
In the instant case plaintiffs set out to prove that defendant's proposed termination would have violated the act. A large amount of time was spent in attempting to establish this. Defendant interposed the defense of bona fide business purpose, and much of plaintiffs' time was devoted to examining defendant's marketing plan. Ultimately, plaintiffs were successful in establishing that defendant's actions would have violated the act, so that they should be reimbursed for their counsel fees in obtaining injunctive relief. As noted in this court's previous opinion, plaintiffs were required to litigate the matter to its conclusion to establish the violation and to uphold the validity of the act before they could receive counsel fees for obtaining injunctive relief. 158 N.J. Super. at 467. They are therefore entitled to fees for this entire phase of the suit.
Plaintiffs also, however, devoted much of their time and effort to attempting to establish that defendant's violation caused them monetary damage. The court found a complete *126 absence of causal relationship between defendant's proposed violation and the damage suffered by plaintiffs. Plaintiffs therefore were not successful in recovering damages allegedly resulting from defendant's violation, and are entitled to no counsel fees for this effort.
Similarly, plaintiffs are not entitled to counsel fees for their attempts to show unjust enrichment and recover punitive damages. Plaintiffs were ultimately unsuccessful in both of these aspects of their suit. The court notes, however, that much of the evidence on punitive damages involved the same issues of good faith and bona fide business purpose as were raised by defendant with regard to the injunctive relief issue. To a certain extent, then, plaintiffs are nevertheless entitled to counsel fees as to this issue.
In its earlier opinion the court held that since plaintiffs were required to litigate this suit to vindicate their right to fees, they were entitled to counsel fees for the entire suit. 158 N.J. Super. at 485. This statement must be somewhat qualified. Plaintiffs devoted a great deal of time and effort to their attempt to recover compensatory damages. This course of action was understandable, but they were unsuccessful nevertheless. Insofar as plaintiffs' time was spent in litigating the damage issue, their counsel fees are not recoverable.
Defendant also seeks to exclude from plaintiffs' recovery a number of other charges. First, defendant contends that no counsel fees should be awarded for work done in connection with the Federal District Court proceeding. See 158 N.J. Super. at 461-462. Briefly summarizing the procedural history of this case, plaintiffs originally commenced suit in this court on April 13, 1976. Defendant thereupon removed the action to the United States District Court on April 23, 1976 on diversity grounds.
On May 24, 1976 Judge Lacey in the federal court proceeding granted summary judgment to defendant because plaintiffs had erroneously based their complaint on the April 17, 1973 agreement rather than the April 23, 1975 *127 agreement which was then in effect. Plaintiffs sought at that time to amend their complaint to allege a claim under the 1975 agreement. In response to this request Judge Lacey said:
In any event, I state for the record that, if Galligan is permitted to amend his complaint to base a claim upon the April 23, 1975 Agreement, I will abstain from proceeding with this litigation under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 [61 S.Ct. 643, 85 L.Ed. 971] (1941).

* * * * * * * *
Thus, since I would abstain from determining the merits of this case if Galligan was permitted to seek relief under the April 23, 1975 Agreement, it serves no purpose for this court to allow Galligan to amend his complaint. He can institute suit anew in state court under the Franchise Practices Act, N.J.S.A. 56:10-10, and attempt to have the April 23, 1975 Agreement extended.
Plaintiffs subsequently filed a new action, bearing a different docket number, in this court.
Defendant contends that this court has no jurisdiction to award counsel fees for the first action and that, in any event, that action was subsequently terminated favorably to defendant by way of summary judgment. On the total record, however, the court believes that to accept this contention would be to exalt form over substance.
In substance, then, plaintiffs commenced an action in this court. Defendant removed the action to federal court. That court apparently granted defendant summary judgment rather than permitting an amended complaint solely because the matter would have been remanded to this court under the abstention doctrine in any event. What actually occurred had exactly the same effect as if (1) the original action had not been removed by defendant, but rather had remained here, and plaintiffs had been granted leave to amend the complaint, or (2) Judge Lacey had granted leave to amend and then remanded to this court. The court may presume that but for defendant's removal of the action to federal court leave to amend would have been given. See R. 4:9-1, *128 requiring that such leave "be freely given in the interest of justice."
The court therefore concludes that in substance the first and second suits, although procedurally separate, were in fact one and the same case. The only reason defendant obtained a "favorable" outcome on the first suit was because of the peculiar procedural history of the case. Plaintiffs' original technical error in the pleadings should not bar the recovery of all counsel fees for the federal suit. The court will therefore allow such counsel fees for that aspect of the case as would otherwise be allowable.
[The court then dealt with various other objections raised by defendant to specific items included in plaintiffs' affidavit of attorney's services rendered. After examining these items, the court excluded from consideration certain services either unrelated to this action or found to be superfluous.]
With these matters in mind, the court must now fix a proper attorney's fee. The factors to be considered were set forth in Westinghouse Elec. Corp. v. Local No. 449, Internat'l Union of Electrical Workers, 39 N.J. Super. 438 (Ch. Div. 1956), mod., 23 N.J. 170 (1957):
(1) The importance of the dispute or jeopardy as to which professional services were made necessary; (2) the nature and extent of the jeopardy or risk involved or incurred; (3) the nature, extent and difficulty of the services rendered; (4) the experience and legal knowledge required, and the skill, diligence, ability and judgment shown; (5) the time necessarily spent by the attorney in the performance of his services; (6) the results obtained; (7) the benefits or advantages resulting and their importance; (8) any special circumstance, including the standing of the attorney for integrity and skill; and (9) the overhead expense to which the attorney has been put. [39 N.J. Super. at 451]
Citing In re Bloomer, 37 N.J. Super. 85, 94 (App. Div. 1955); see State v. United States Steel Corp., 22 N.J. 341, 360-361 (1956); DR 2-106(A) of the Code of Professional Responsibility of the American Bar Association.
[The court then examined the affidavit of plaintiffs' counsel and, following the guidelines previously set forth, *129 disallowed a total of 170 hours of counsel's time. In addition, the court reduced the hourly compensation rate sought by plaintiffs based on its evaluation of counsel's experience, and disallowed costs and disbursements in the amount of $1,580.]
Based on these computations, the court will allow plaintiffs $25,865 in counsel fees and $1,700.46 in costs.