172 N.J. Super. 196 (1980)
411 A.2d 714
WESTFIELD CENTRE SERVICE, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND JAMES GALLIGAN, INDIVIDUALLY AND AS PRESIDENT OF WESTFIELD CENTRE SERVICE, INC., PLAINTIFFS-RESPONDENTS,
v.
CITIES SERVICE OIL COMPANY, A CORPORATION OF THE STATE OF DELAWARE AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1979.
Decided February 4, 1980.
*198 Before Judges MATTHEWS, ARD and POLOW.
Andrew S. Polito argued the cause for appellant (Mattson, Madden & Polito, attorneys; Andrew S. Polito and Frank D. Angelastro on the brief).
Vincent K. Loughlin argued the cause for respondents (Johnstone & O'Dwyer, attorneys; Vincent K. Loughlin on the brief).
PER CURIAM.
Notwithstanding the voluminous trial record and the complex legal and factual issues which generated two reported opinions by the trial judge, we are ultimately concerned on appeal only with the propriety of the award of counsel fees in favor of plaintiff and the amount thereof.
The original controversy involved defendant Cities Service's attempt to terminate the gasoline dealership franchise held by plaintiff Westfield Centre Service Inc. (Westfield)[1] on a service station which plaintiff-franchisee leased from defendant-franchisor. The avowed objective sought to be attained by Cities Service in its refusal to renew plaintiff's franchise was the sale of the premises in connection with an alleged general reduction in its overall retail outlet density as part of a new national *199 marketing strategy. The background and pivotal factual considerations are carefully set forth and analyzed by the trial judge in the reported decisions, Westfield Centre Serv., Inc. v. Cities Serv. Oil Co., 158 N.J. Super. 455 (Ch.Div. 1978), and 162 N.J. Super. 114 (Ch.Div. 1978). Hence, the details of the controversy between the parties need not be reiterated here except as essential to development of this opinion.
Westfield purchased the service station in 1973 and operated it continuously until its business was discontinued in July 1977. In June 1975 Cities Service had advised plaintiff, its tenant-franchisee, that the gas station property was going to be sold and that plaintiff could purchase the premises for $259,000. Counsel for Westfield responded that any such sale would violate the New Jersey Franchise Practices Act, N.J.S.A. 56:10 1 et seq., but on January 22, 1976 plaintiff was notified that the lease and franchise would not be renewed.
On April 13, 1976 Westfield filed a complaint in the Chancery Division under the Franchise Practices Act seeking a restraint against the termination threatened by Cities Service. The matter was removed to the federal court where, on April 28, 1976, a temporary restraining order was issued preventing termination of the lease during pendency of the action. However, on May 24, 1976 the complaint was dismissed without prejudice on a technical pleading error. The Federal District Court judge commented that the matter would be more appropriate for the state court, and an amended complaint was then filed in the Chancery Division on May 26, 1976.
On June 18, 1976 the Chancery Division issued an interlocutory injunction restraining sale of the premises and termination of plaintiff's franchise. Ultimately, plaintiff's demands included not only a permanent injunction against interference with the lease and the operation of its franchise but also damages, counsel fees and costs. However, on or about July 31, 1977, before the matter went to trial, plaintiff's business operations *200 ceased, according to the findings of the trial judge, "for reasons unrelated to any actions by defendant." Hence, the underlying basis for imposition of interlocutory restraints no longer existed and an order vacating the preliminary injunction was entered on August 5, 1977.
Thereafter the complaint was again amended to demand damages for financial reverses suffered as a result of defendant's allegedly improper behavior. The trial commenced on September 29, 1977 and continued for several weeks thereafter. In a comprehensive reported opinion dated March 6, 1978, 158 N.J. Super. 455, the judge upheld the validity of the Franchise Practices Act but ruled that the business reverses were unrelated to any activity of defendant and that Westfield had recouped its original investment. Hence, damage claims on those grounds were rejected. Demands for injunctive relief and for compensatory damages for unjust enrichment were also dismissed.
Nonetheless, based upon a finding that the attempted termination of the franchise in order to sell the property was a violation of the Franchise Practices Act and that the act would have been violated but for the temporary injunction, there was an award of counsel fees and costs in favor of plaintiff's counsel. The second reported decision, dated June 2, 1978, 162 N.J. Super. 114, deals with the constitutionality of the counsel fee provision of N.J.S.A. 56:10 10 and the award of fees to plaintiff's attorney in the amount of $25,865 plus costs of $1,700.46. It is that determination which is the ultimate issue before us on appeal.
N.J.S.A. 56:10 10 provides:
Any franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees.
*201 We are fully satisfied that the quoted provision is constitutional for the reasons stated by Judge Ackerman in his second reported opinion in 162 N.J. Super. at 116 125. Furthermore, we agree with the trial judge's conclusion that interlocutory injunctions were appropriate and necessary temporary measures to preserve the status quo pending the opportunity of the court to resolve the important basic controversy between the parties. Evening Times Print. & Pub. Co. v. American Newspaper Guild, 124 N.J. Eq. 71, 74 (E. & A. 1938); Brunetto v. Montclair, 87 N.J. Eq. 338, 341 (E. & A. 1917); Coleman v. Wilson, 123 N.J. Super. 310, 319 (Ch.Div. 1973). However, for reasons stated later in this opinion, we find it unnecessary to deal with the determination of the trial judge concerning the ultimate effect of the Franchise Practices Act on the intention of the franchisor to dispose of its property for otherwise legitimate business reasons.
We are concerned with and deal only with the propriety of the award of fees to plaintiff's attorney as compensation for services rendered. The trial judge excluded from that award plaintiff's unsuccessful claims and allocated a total of 170 hours of counsel's time for legal services related to claims on which relief was denied. Nonetheless, the judge awarded $25,865 against a total fee billing of $41,080, recognizing almost 500 hours of counsel's time as being compensable under the statute.
The only "successful" effort in terms of legislative intent under the statute is that effort in which counsel has prevailed for the practical benefit of his client. In the case before us the only effort which was successful on behalf of Westfield to the extent that plaintiff enjoyed a practical benefit was that resulting in the interlocutory injunctions permitting continued operation of the franchise for the period between April 1976 and July 1977. Had the proceedings terminated at that point, defendant would have been obligated to compensate plaintiff's counsel for the legal work involved in obtaining the interlocutory injunction. Since the only practical advantage to plaintiff's business *202 resulting from counsel's efforts had come to an end, logic would dictate that counsel fees be fixed as of August 1977. Nevertheless, there is a basic dilemma. The award of counsel fees for plaintiff's preliminary relief is based upon the assumption that such relief was properly granted. The trial judge concluded that "plaintiffs were required to litigate the matter to its conclusion to establish the violation and to uphold the validity of the act before they could receive counsel fees for obtaining injunctive relief." 162 N.J. Super. at 125. But there were also other substantial claims litigated, all of which were resolved against plaintiffs, including demands for compensatory damages, for punitive damages and for the right to an alternate site for use by the franchisee. Hence, we find the award of fees for almost 500 hours of counsel's 668 1/4 total billable hours substantially excessive and we find the relationship of $25,865 for counsel's "successful" legal efforts against $15,215 for legal services for all of plaintiff's "unsuccessful" claims, to be quite disproportionate.
Since the adoption of the new rules after the 1947 Constitution took effect there have been several efforts to enlarge the limited areas within which counsel fees may be awarded to a successful litigant. In 1948 the court considered two contrasting philosophies, one supporting liberal availability of fees to successful litigants and the prevailing view advocating rigid restrictions on the entire practice of judicial allowance of counsel fees. See State v. Otis Elevator Co., 12 N.J. 1, 26 28 (1953) (Jacobs, J. dissenting). From time to time the problem still receives attention. See e.g., Red Devil Tools v. Tip Top Brush Co. Inc., 50 N.J. 563 (1967); Cohen v. Fair Lawn Dairies, Inc., 86 N.J. Super. 206 (App.Div. 1965), aff'd 44 N.J. 450 (1965). There have been periodic demands that the rule with regard to counsel fees be substantially liberalized to discourage unjustifiable litigation. However, our Supreme Court has continued to reject liberalization of the rule because of previous abuses and the fear that such liberality may unjustly discourage assertion of legitimate *203 claims. Bergen Builders, Inc. v. Horizon Developers, Inc., 44 N.J. 435, 439 (1965).
Although the strictly limited authority to award fees as originally promulgated has been modestly expanded, the general policy of strict limitation of authority to make such awards has not been relaxed.
The Supreme Court's rejection of any essential change in this rule and in the 1971 and 1975 amendments thereto may be construed as a further expression of its concern that expansion of the court's power to allow counsel fees might well result in impositions upon judicial administration and upon litigants which would outweigh any advantages that might be anticipated. [Pressler, Current N.J. Court Rules, Comment to R. 4:42-9 (1979)]
R. 4:42-9(a)(8) permits allowance of fees where expressly authorized by statute. The legislative concern which led to the enactment of N.J.S.A. 56:10-10 authorizing counsel fees to a successful franchisee-plaintiff was based upon the disparity in bargaining power of the parties to most franchise agreements. Where such disparity exists the right to award counsel fees against the more powerful party is justifiable in an effort to maintain a reasonable balance between them. A similar concern brought about the adoption in September 1971 of R. 4:42 9(a)(6) permitting the award of counsel fees in favor of a successful claimant in an action on a liability or indemnity policy of insurance. Felicetta v. Commercial Union Ins. Co., 117 N.J. Super. 524 (App.Div. 1971), certif. den. 60 N.J. 141 (1972); N.J. Mfrs. Ins. Co. v. Consolidated, 124 N.J. Super. 598 (Law Div. 1973).
Hence, we have no difficulty recognizing the inherent public policy reasons for permitting counsel fees only to a successful franchisee-plaintiff, even without mutual remedies. Still such an award must be "reasonable" and reflective of the extent to which the successful party has prevailed. In assessing the reasonableness of such an award in complex litigation, consideration must be given to the extent to which plaintiff has actually benefitted in the context of all of the relief sought. *204 Where a substantial portion of the time spent by counsel was devoted to issues which were abandoned or which were adversely resolved on the merits, the award must reflect such factors. See Younger v. Glamorgan Pipe and Foundry Co., 418 F. Supp. 743 (W.D.Va. 1976), vacated and remanded on other grounds 561 F.2d 563 (4 Cir.1977), citing Taylor v. Goodyear Tire and Rubber Co., 6 FEP Cases 673 (N.D.Ala. 1973), where the court reasoned that counsel fees are appropriate for efforts which were successful but that the portion of counsel's time expended toward an unsuccessful result should not be rewarded. The fact that contentions which were successful are coupled with other unsuccessful claims should not prevent allocation of fee charges. Younger v. Glamorgan Pipe and Foundry Co., supra at 791. We agree with that rationale.
In the matter presently under consideration the rather extended and complicated trial produced a ruling that the statute is valid. That ruling is affirmed substantially for the reasons stated by the trial judge and we find appellant's remaining arguments to be substantially without merit except as specifically noted herein.
However, at the end of the trial the judge resolved all claims for substantive relief against plaintiff. Hence, the benefit enjoyed by plaintiff-franchisee must be measured by the value of the continuation of its franchise from the issuance of the original interlocutory injunction until Westfield ultimately went out of business in July 1977. The value of counsel's recoverable legal services under N.J.S.A. 56:10-10 must be commensurate with the extent of that benefit.
Although we agree with Judge Ackerman that N.J.S.A. 56:10-10 should be construed within the policy suggested by Younger and Taylor we cannot agree that the award of approximately two-thirds of the charges for total services rendered proportionately represents the success enjoyed by Westfield as a result of counsel's efforts in this case.
It is argued that the extended trial was essential in order to determine whether counsel fees were recoverable for the actual *205 benefit enjoyed by plaintiff, i.e., the interlocutory injunction. Except as indicated below, we reject this argument as a matter of policy. In our view, at the time of the termination of plaintiff's business operations in July 1977 all of the practical benefit enjoyed as the result of counsel's efforts had already been accomplished and counsel fees should be awarded for that successful effort. The success, although limited, was of some value nevertheless. Issuance of the temporary injunction was not arbitrary, having been based upon affidavits, the judge's preliminary determination of the relative rights of the parties under the statute and a pendente lite determination that the status quo should be preserved. The effort of counsel necessary to support the validity of the statute (which is not challenged on this appeal) is also compensable as a benefit to plaintiff. However, most of the trial involved proofs and argument on issues resolved against plaintiff and for which fees should not be awarded. Any other result would encourage unnecessary litigation without ultimate benefit to the litigant and would violate the general policy against broad counsel fee authority referred to previously.
We affirm the ruling of the trial court that plaintiff is entitled to an award of counsel fees pursuant to statute. However, we remand for reevaluation of the amount to be awarded. Of the total 668 1/4 hours billed in the certification of services submitted by plaintiff's counsel, the trial judge disallowed only 170 hours as the time allotted to unsuccessful efforts. Since the billing is by total hours for extended time periods, it is impossible to apportion the time spent by counsel on the various unsuccessful aspects of this litigation without a much more specific time allocation breakdown. The amount of counsel fees to be awarded on remand, in accordance with this opinion, should be established by detailed certification or affidavit unless it is determined by the trial court that a plenary hearing is necessary for an equitable resolution of the problem. See Cohen v. Fair Lawn Dairies, Inc., supra, 44 N.J. at 452.
NOTES
[1] Plaintiff Galligan was president and sole stockholder of plaintiff Westfield Centre, Inc., and they have common interests in this litigation. Some of the original agreements with Cities Services were executed by Galligan individually and later assigned to Westfield. Hence, we refer in this opinion to either or both plaintiffs by the use of the name "Westfield" and by all references to "plaintiff."