891 A.2d 616 (2005)
383 N.J. Super. 177
Cely PADILLA, Plaintiff-Appellant,
v.
BERKELEY EDUCATIONAL SERVICES OF NEW JERSEY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 2005 (Telephonically).
Decided December 5, 2005.
Jonathan Nirenberg, Roseland, argued the cause for appellant (Deutsch Resnick, *617 attorneys; Mr. Nirenberg and Jamie I. Cash, Hackensack, on the brief).
Joseph V. MacMahon argued the cause for respondent (Struble Ragno Petrie Bonanno MacMahon & Acquaviva, attorneys, Riverdale; Mr. MacMahon, of counsel and, with Kelly Ann Miller, on the brief).
Before Judges KESTIN, LEFELT and FUENTES.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
In a four-count amended complaint, plaintiff alleged wrongful termination of her employment by way of constructive discharge. She pled violations of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, on the basis of her pregnancy, generally on gender grounds, because of her familial status, and by way of reprisal. She sought "compensatory damages, including but not limited to back pay, front pay, emotional distress damages, punitive damages, pre- and post-judgment interest, counsel fees," and other appropriate relief.
Following a four-day trial, plaintiff voluntarily dismissed the gender and familial status discrimination claims. On the remaining counts, the jury returned a verdict for plaintiff on the claim of discriminatory conduct regarding plaintiff's pregnancy, and a verdict for defendant on constructive discharge. The jury did not address any of the other issues submitted to it, including damages. The court denied plaintiff's motion for a new trial.
Despite a reference in plaintiff's notice of appeal to a judgment or order entered on March 19, 2004, the record on appeal does not include a judgment dismissing plaintiffs claims, only the March 15, 2004 order denying plaintiff's motion for a new trial. The stated specification in the notice of appeal is:
Plaintiff is appealing with respect to the entire Motion for a New Trial and certain rulings made at trial with respect to her claims of pregnancy/gender retaliation between March 10, 2000 and May 23, 2000. She is not appealing any issues relating to her constructive discharge claims.
On appeal, plaintiff contends that the trial court erred in framing its instructions to the jury and that the jury interrogatories were materially inconsistent with the applicable law. We regard the jury interrogatories as fatally flawed in one significant respect, requiring a reversal and a remand for a new trial as to damages for emotional distress.
Plaintiff started working for defendant in 1996 as an accounting clerk. Over a period of five years, she was consistently promoted. In early March 2000, when she was six-months pregnant, plaintiff was promoted to one of the two assistant controller positions. Several employees worked under her supervision. A few weeks after the promotion, plaintiff took a week-long medical leave due to some pregnancy complications. During the course of a period from plaintiff's return to work on March 21, 2000, until her maternity leave began on May 23, 2000, Steven Rutkowski, defendant's controller and plaintiff's immediate supervisor, informed her that some of her duties had been reassigned to another employee, one of plaintiff's subordinates, and that plaintiff would no longer supervise anyone. Instead, plaintiff was assigned to a special project that the employer classified as important, but which plaintiff regarded as less than significant. Plaintiff alleged that she asked Rutkowski "if he was making changes based on the assumption that [she] was not going to be returning after [her] maternity leave," and that Rutkowski responded that his *618 wife had not returned to work after having children.
Defendant contended that a reorganization was in progress, that the assistant controller positions had been eliminated, and that plaintiff's duties were changed "[i]n the context of reorganizing the department." Michael J. Smith, defendant's senior vice president, chief financial officer and treasurer, testified at trial that the other assistant controller had been fired, but the company wished to retain plaintiff "in the same place and at the same salary, reporting to the same boss." He stated that plaintiff was assigned to other important duties. He also testified that, when plaintiff returned from the one-week medical leave, she reported that she had been on bed rest during that week and that he "understood [] she was in serious risk of miscarriage." Even though plaintiff did not request an accommodation for her condition, in the light of what he knew, and preparing for the transitional period when plaintiff would be on maternity leave, Smith testified that he
did not want any additional pressure on [plaintiff] as of that particular point in time. I didn't want no [sic] additional responsibility, I wanted to make the rest of her time here at Berkeley as smooth as possible, no pressure necessary, just keep her standard work load, let her do the work that was expected of her, isolate her from all the other craziness that was going on in the department at the time.
The second part was transitioning her work to people who would be doing it while [plaintiff] would be out on maternity leave.
* * *
[F]rom the period that she came back from pregnancy-related illness to her maternity leave, [plaintiff's] work was transitioned to the individuals who would be doing it during [her] maternity leave.
Plaintiff alleged that defendant had promoted one of her subordinates "and permanently assigned her virtually all of [plaintiff's] former job duties." She asserted, inter alia, that she was "isolated and ignored ... for almost two months[,]" and that Rutkowski's "tone [toward her] became hostile" following her return from the one-week medical leave.
Plaintiff also contended that defendant had engaged in an LAD-prohibited reprisal after she complained to Smith about Rutkowski's conduct. In addition to poor treatment on a personal basis, her responsibilities for budget and financial analysis had been taken away. When Smith took no action, plaintiff had complained to defendant's director of human resources. It was shortly after this last complaint, plaintiff alleged, that her subordinate was promoted and permanently assigned most of plaintiff's duties.
Plaintiff's maternity leave began on May 23, 2000. She returned to work on October 2, 2000. Dissatisfied with the way in which conditions at work and her job responsibilities had changed even more so during the duration of her leave, plaintiff resigned on October 17, 2000.
Following her resignation, plaintiff treated with a psychologist. She alleges that she felt "demeaned, embarrassed and humiliated" by the removal of "her job duties because of her pregnancy-related illness only two weeks after" she had been promoted to the position of assistant controller. The psychologist diagnosed a tension disorder with depressive symptomology caused by discriminatory treatment.
The trial judge charged the jury adequately on unlawful discrimination, including a satisfactory elucidation of the concepts of demotion and retaliation, and he *619 provided a full instruction on the principles governing constructive discharge. The charge also addressed adequately the concept of "mixed motive," and sufficiently outlined the shifting-proof-burdens paradigm of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See, e.g., Mogull v. CB Commercial Real Estate Group, Inc., 162 N.J. 449, 461-62, 744 A.2d 1186 (2000).
As to damages, the judge explained the concepts governing the economic losses claimed by plaintiff, and then turned to the subject of damages for emotional distress. The latter portion of the charge included the following instruction:
If and only if you find that [plaintiff] is entitled to a verdict against the defendants[] under the law against discrimination, you may award [her] a sum which will compensate her for any emotional distress already suffered from her job and any emotional distress which you may find from the evidence in this case that [she] may reasonably suffer from in the future from her discharge.
* * * *
You are to consider the nature, character, and seriousness of emotional stress or mental anguish which Ms. Padilla suffered. You must also consider its extent or duration as any award you make must cover the damages suffered by Ms. Padilla since the wrongdoing to the present time, and even into the future, as I said, if you should so find that she has suffered any type of future damages.
* * * *
Thus having given your weight and consideration [to] each of the facts presented to the extent you feel weight and consideration is merited, you will have arrived at a judgment which affixes the amount of money [plaintiff] shall receive in compensation for the total extent of emotional suffering including all elements which I have mentioned to you.
Notwithstanding the foregoing instruction regarding emotional distress damages, the jury interrogatories read as follows:
A vote of 6 out of 7 jurors is sufficient for a verdict.
I have described for you the areas of discrimination, which the plaintiff, Padilla, has asserted, i.e., that the changes in her job duties were caused by the intentional acts of the defendant, Berkeley, due to her pregnancy. She has asserted that the Berkeley retaliated against her by loss of job duties and that the actions of Berkeley created intolerable conditions, which caused her constructive discharge. It is the contention of the defendant, Berkeley, that they did not engage in these activities.
1. Do you find by a preponderance of the evidence that the defendant, Berkeley, engaged in discriminatory conduct regarding the plaintiff's pregnancy?
 YES ____ VOTE ____
 NO ____ VOTE ____
If your answer to this question is "no," cease your deliberations and advise the court.
If your answer to this question is "yes," proceed to question # 2.
2. Do you find by a preponderance of the evidence that the actions of the defendant, Berkeley, in discriminating against the plaintiff, Padilla, caused her constructive discharge?
 YES ____ VOTE ____
 NO ____ VOTE ____
If your answer to this question is "no," cease your deliberations and advise the court.
If your answer to this question is "yes," proceed to question # 3.
3. Do you find that the defendant, Berkeley, has articulated or advanced a *620 legitimate business reason for its decision to take away Ms. Padilla's job duties?
 YES ____ VOTE ____
 NO ____ VOTE ____
If your answer to this question is "yes," cease your deliberations and advise the court.
If your answer to this question is "no," proceed to question # 4.
4. Do you find by a preponderance of the evidence that the plaintiff, Padilla, has proved that the defendant's legitimate business reason was a pretext for discrimination?
 YES ____ VOTE ____
 NO ____ VOTE ____
If your answer to this question is "no," cease your deliberations and advise the court.
If your answer to this question is "yes," proceed to question # 5.
5. What amount of economic damages, including back pay, front pay and loss of benefits, has the plaintiff, Padilla, sustained as a result of the defendant's discriminatory decision to take away her job duties?
$ _______
6. What amount of emotional damages has the plaintiff, Padilla, sustained as a result of the mental or emotional distress sustained from the defendant's decision to take away her job duties?
$ _______
The jury answered "yes" to question 1, by a vote of 7-0, finding that unlawful discrimination had occurred; and "no" to question 2, by a vote of 6-1, rejecting plaintiff's claim of constructive discharge. Pursuant to the instructions in the interrogatory form, the jury ceased deliberations and returned its verdict, i.e., no answers were provided to questions 3, 4, 5 and 6.
There is substantial credible evidence in the record to support the findings the jury actually made; therefore, we are bound by those verdicts. Carrino v. Novotny, 78 N.J. 355, 360, 396 A.2d 561 (1979); Baxter v. Fairmont Food Co., 74 N.J. 588, 596-601, 379 A.2d 225 (1977). Thus, we take as a given that defendant had engaged in unlawful discrimination on account of plaintiff's pregnancy, but that the discriminatory conduct was not adequate as a basis for justifying plaintiff's resignation. Because the jury had been properly instructed on the issue of constructive discharge, but rejected that claim, the question of plaintiff's economic damages did not survive the verdict. There was no proof in the record that plaintiff had suffered any economic losses as a result of defendant's discriminatory conduct beyond those engendered by her resignation. Thus, with its rejection of the constructive discharge theory, the jury had no basis to consider plaintiff's claims for back pay, front pay, loss of benefits or other economic damages.
Nevertheless, plaintiff's claim for noneconomic damages, i.e., by reason of emotional distress, should have been considered. It is no longer open to question whether emotional distress damages are assessable for unlawful discrimination in employment, in violation of the LAD, even where no economic damages have been engendered. See Tarr v. Ciasulli, 181 N.J. 70, 78-79, 853 A.2d 921 (2004)(decided since the trial in this matter). Conceptually, an act of unlawful discrimination may occur in the context of job assignments and general treatment of the employee that is sufficient to cause a claimant compensable emotional distress but insufficient to justify a resignation.
We hold, therefore, that the jury interrogatories were erroneous to the extent they instructed the jury to return its verdict *621 without considering the issue of emotional distress damages once it had found that an unlawful discrimination had occurred. Accordingly, we remand for a new trial as to emotional distress damages only.
We reject plaintiff's arguments that the jury instructions or jury interrogatories were flawed in any other respect. With the wholly appropriate instructions that were given to the jury on "mixed motive" and retaliation, plaintiff was not entitled to have special verdicts on those questions. "Mixed motive" is a matter of proof; and the issue of retaliation is significant as a specifically proscribed category of unlawful discrimination. See N.J.S.A. 10:5-12d. The jury was required to consider those factors, as the trial court instructed, in determining whether unlawful discrimination had occurred. There was no need for the jury to make specific findings regarding those elements.
In a related vein, we note that the jury interrogatories were over-inclusive in another way. There was no need to require the jury, in the circumstances, to return special verdicts on the elements of the McDonnell Douglas burden-shifting principle, as called for in questions 3 and 4, which the jury did not reach because of the earlier instruction to cease deliberations. Manifestly, the jury needed to address the McDonnell Douglas tests, as the trial judge correctly instructed. The determinations to be made in that regard, however, while part and parcel of the jury's consideration of the claim of unlawful discrimination, did not need to be reported discretely.
Because plaintiff has prevailed on her claim of unlawful discrimination, she is entitled to an award of attorneys fees in addition to whatever damages may be found for emotional distress. See N.J.S.A. 10:5-27.1. Therefore, the scope of our remand includes an appropriate determination of the counsel fee issue, as well, including counsel fees bearing upon this appeal. See R. 2:11-4 (last sentence.)
Reversed and remanded.