970 A.2d 1083 (2009)
407 N.J. Super. 302
MYRON CORPORATION, Plaintiff-Appellant,
v.
ATLANTIC MUTUAL INSURANCE CORPORATION, Defendant-Respondent.
No. A-5528-07T2
Superior Court of New Jersey, Appellate Division.
Argued April 20, 2009.
Decided June 5, 2009.
*1085 Dennis T. Smith, Hackensack, argued the cause for appellant (Pashman Stein, attorneys; Mr. Smith, of counsel and on the brief).
Kevin E. Wolff, Morristown, argued the cause for respondent (Couglin Duffy, L.L.P., attorneys; Mr. Wolff, of counsel and on the brief).
Before Judges LISA, REISNER and SAPP-PETERSON.
The opinion of the court was delivered by
REISNER, J.A.D.
Plaintiff Myron Corporation (Myron) appeals from a June 6, 2008 trial court order denying plaintiff's application for counsel fees from its insurer, defendant Atlantic Mutual Insurance Corp. (Atlantic), pursuant to Rule 4:42-9(a)(6). We conclude that because Myron prevailed on the merits of its New Jersey coverage lawsuit, Myron was entitled to counsel fees for Illinois litigation which was part of the same controversy over the coverage issue. Accordingly, we reverse and remand for further proceedings.

I
These are the most pertinent facts. Myron is a New Jersey-based business with principal offices in Maywood, New Jersey. Myron obtained a commercial general liability (CGL) policy from Atlantic, covering, among other things, liability for property damage and for "personal and advertising injury." As part of its operations as "a direct seller of business promotional products," Myron sent telefaxes (faxes) to various businesses throughout the country. That activity prompted the filing of several lawsuits against Myron for allegedly sending "junk faxes" in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C.A. § 227, and various state laws.
Specifically, on June 3, 2003, Stonecrafters, Inc., an Illinois corporation, filed a class action complaint against Myron in Illinois state court (the Stonecrafters lawsuit), alleging violations of the TCPA and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, as well as common law conversion. The complaint was accompanied by a proposed motion for class certification on behalf of a nationwide class of alleged victims of Myron's faxing activities.
On October 28, 2003, Myron's counsel sent Atlantic a letter tendering the Stonecrafters complaint and several other TCPA-related claims to the insurer for defense and indemnity under the CGL policy. The letter advised Atlantic that Stonecrafters was about to file its class certification motion pursuant to the Illinois court's case management order. The letter also enclosed TCPA claims against Myron from Colorado, Arizona and Missouri, and set forth the legal basis for Myron's claim that Atlantic was obligated to provide a defense under New Jersey law, since the policy was issued in New Jersey.[1]
*1086 On January 28, 2004, Atlantic responded, agreeing to defend Myron in the Stonecrafters lawsuit "under a full and complete reservation of any and all rights which Atlantic has under its policies." The letter acknowledged the scarcity of case law construing either the TCPA or an insurer's duty to defend against TCPA claims, and warned that Atlantic reserved "the right to withdraw its defense at any time." Atlantic deferred a decision on the claims that had not yet resulted in filed lawsuits.
On March 8, 2005, more than a year after assuming its insured's defense, Atlantic filed a complaint against Myron in the United States District Court for the Northern District of Illinois, seeking a declaration that the Atlantic policy did not cover the assorted multi-state TCPA claims against Myron. Atlantic filed the 2005 federal action shortly after the United States Court of Appeals for the Seventh Circuit (which includes Illinois) issued a decision denying insurance coverage for TCPA claims.[2] However, on August 22, 2005, the Illinois federal district court dismissed Atlantic's action for lack of diversity jurisdiction, because at that time the amount in controversy was less than $75,000. See 28 U.S.C.A. § 1332.
Undeterred, Atlantic found some additional defense invoices totaling in excess of $75,000, and re-filed the federal court complaint on August 24, 2005. Atlantic Mut. Ins. Co. v. Myron Corp., Case No. 05 C 4886 (N.D.Ill.). A few days later, on August 29, 2005, Myron filed its own declaratory judgment complaint in Bergen County, New Jersey. Myron Corp. v. Atlantic Mut. Ins. Corp., BER-L-6038-05. However, on Atlantic's motion, the New Jersey judge dismissed that action without prejudice on November 4, 2005, "pending the resolution of the earlier-filed" Illinois federal court action.
Not to be out-maneuvered, Myron then filed an abstention motion in the Illinois federal district court. The federal court granted the motion, reasoning that the assorted TCPA cases against Myron were scattered throughout the country; the insurance coverage dispute had no real connection to the federal courts of Illinois; and New Jersey had the most substantial interest in the coverage issue because the insured was a New Jersey company and the policy was issued in New Jersey.
The federal judge discounted Atlantic's purported interest in having the dispute heard in a "federal forum," noting that Atlantic could have achieved that end by removing Myron's New Jersey action to New Jersey federal court:
Atlantic Mutual chose to put all its eggs in one basket by not removing the New Jersey case and by filing suit in the Northern District of Illinois. Thus, if it ends up pursuing its claims in state court, it is due to its own tactical decision.
The federal judge also reasoned that the case did not involve primarily federal issues, but rather state law issues concerning insurance coverage. "Moreover, out of all the possible options, a New Jersey court has the greatest interest in resolving an insurance coverage dispute arising from *1087 policies which appear to have been issued in New Jersey to a New Jersey corporation with its principal place of business in New Jersey." On the abstention issue the court reasoned that "this court has no real connection to the parties' insurance dispute, while the alternative forum in New Jersey has a strong connection." The court therefore abstained to permit Myron to pursue its New Jersey declaratory judgment action.
Having won the forum selection battle, Myron moved the theatre of war back to New Jersey, by re-filing its declaratory judgment action in Bergen County. Myron Corp. v. Atlantic Mut. Ins. Corp., Docket No. BER-L-5539-06. In this phase of the controversy, Myron obtained a favorable decision on the merits of the underlying coverage issue, with respect to Atlantic's duty to defend.
Noting that the "legal battleground [over TCPA coverage] is littered on both sides with the detritus of an incrementally waged war on multiple fronts," the Bergen County judge determined that Atlantic had a duty to defend Myron in the Stonecrafters case.[3]Myron Corp. v. Atlantic Mut. Ins. Corp., supra, No. BER-L-5539-06 (Law Div. Jan. 22, 2007) (slip op. at 2). He deferred a decision on the indemnity issue pending the outcome of the underlying TCPA suit. Thereafter, the parties settled all of Myron's counsel fee claims in connection with the Stonecrafters case and the Bergen County declaratory judgment action. They did not settle Myron's claim for counsel fees for the Illinois federal declaratory judgment litigation.
In an oral opinion placed on the record on June 6, 2008, the Law Division judge denied Myron's application, under Rule 4:42-9(a)(6), for approximately $160,000 in legal fees and costs it claimed to have incurred in defending against Atlantic's two federal court declaratory judgment actions. He reasoned that the federal litigation over the coverage issue was "separate and independent" from the underlying Stonecrafters lawsuit and the New Jersey coverage action. He further concluded that our Supreme Court would not have intended to apply Rule 4:42-9 "extraterritorially." He also reasoned that since Illinois has no analogue to Rule 4:42-9, Myron would not have been able to collect counsel fees if it had prevailed in the Illinois coverage case, unless the federal court had determined to apply New Jersey law to the fee issue. He concluded that
the application is not supported by Rule 4:42-9a(6) because the fees that are sought were not created, generated or incurred or earned in an action upon a liability or indemnity policy of insurance in favor of a successful claimant. They were earned in a different action....

II
Our review of the trial court's legal conclusions is de novo. Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). We ordinarily review a trial court's decision to award or withhold counsel fees for abuse of discretion. Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995); Strahan v. Strahan, 402 N.J.Super. 298, 317, 953 A.2d 1219 (App.Div.2008). However, we owe no deference to an exercise of the trial court's discretion that is based on that court's misapprehension of the applicable law. New Century Fin. Servs., Inc. v. Nason, 367 N.J.Super. 17, 28, 842 A.2d 179 (App.Div.2004). Here, the trial *1088 court could not meaningfully exercise discretion, because it concluded that it had no discretion to grant fees. Thus, we turn to that central legal issue.
Research reveals no New Jersey cases addressing the application of Rule 4:42-9(a)(6) to counsel fees incurred in out-of-state litigation. We begin our consideration of this novel issue by considering the language and purpose of the Rule, which permits an award of counsel fees "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." Ibid. (emphasis added). Numerous decisions have addressed the important public policy underpinnings of the Rule.
In Sears Mortgage Corp. v. Rose, 134 N.J. 326, 634 A.2d 74 (1993), a homebuyer's attorney absconded with the closing proceeds, and failed to pay off the seller's mortgage. The Supreme Court concluded that both the seller, Rose, and the buyer, Kaiser, were entitled to counsel fees under Rule 4:42-9(a)(6), after they successfully sued to require the title insurer, Commonwealth, to pay off the mortgage. The Court explained the purpose of the Rule as follows:
The policy underlying Rule 4:42-9(a)(6) is "to discourage groundless disclaimers and to provide more equitably to an insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection." Guarantee Ins. v. Saltman, 217 N.J.Super. 604, 610, 526 A.2d 731 (App.Div.1987). Although Commonwealth may not have been acting in bad faith when it refused to honor Kaiser's and Rose's demands, to deny Rose and Kaiser their counsel fees would be to deny them the benefits of the insurance contract that they achieved as successful litigants.
[Id. at 356, 634 A.2d 74.]
As we further explained in Liberty Village Associates v. West American Insurance Co., 308 N.J.Super. 393, 406, 706 A.2d 206 (App.Div.), certif. denied, 154 N.J. 609, 713 A.2d 500 (1998): "The theory is that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the policy." Hence, even if an insurer files a declaratory judgment action in good faith to contest its obligation to cover a claim, it must pay the insured's legal fees if it loses. Otherwise, the insured will be deprived of "the benefits of the insurance contract." Sears, supra, 134 N.J. at 356, 634 A.2d 74; Iafelice v. Arpino, 319 N.J.Super. 581, 589-91, 726 A.2d 275 (App.Div.1999).
In addition to harming the insured, an insurer's refusal to provide liability coverage may also, as a practical matter, preclude an innocent injured party from being able to recover for the injury. Hence, third-party beneficiaries may also sue an insurer to establish coverage and may recover counsel fees if successful. Sears, supra, 134 N.J. at 356, 634 A.2d 74; Iafelice, supra, 319 N.J.Super. at 590, 726 A.2d 275.
We have recognized that, as a rule of procedure, Rule 4:42-9(a)(6) applies to litigation in our courts, even if those courts are applying the substantive law of another state. Du-Wel Products, Inc. v. U.S. Fire Ins. Co., 236 N.J.Super. 349, 362-63, 565 A.2d 1113 (App.Div.1989), certif. denied, 121 N.J. 617, 583 A.2d 316 (1990). In Du-Wel, a Michigan corporation sued its insurer in New Jersey over coverage for activities occurring in Michigan. We concluded that the plaintiff could recover counsel fees if it prevailed in the coverage action here:
While we do not intend to encourage forum-shopping, we do not think it appropriate *1089 to foreclose any litigant who properly seeks redress in our courts, whether or not a resident and whether or not our substantive law applies, from the full scope of remedies affordable by our court rules. This jurisdiction views its counsel-fee rules as inextricably bound to the question of access to our courts. They are thus procedural rules in the fundamental sense, and we see no reason to withhold their applicability from any litigant having a nexus with this State sufficient to support the prosecution of the claim here.
[Id. at 363, 565 A.2d 1113.]
Atlantic relies on Du-Wel to support its argument that even if the Illinois federal court, sitting in diversity, had applied New Jersey's substantive insurance coverage law, it would have applied the procedural law of Illinois and therefore would not have awarded Myron its counsel fees, because Illinois law requires an insured to prove that the insurer acted with malice or bad faith. Atlantic contends that because Myron could not have obtained counsel fees in the Illinois federal action, even if it had prevailed on the coverage issue there, Myron also should not be able to recover those fees in the New Jersey coverage action. Atlantic further contends that Myron was not a "successful" claimant in the Illinois federal action. We find these arguments unpersuasive.
In particular, we cannot agree that awarding Myron counsel fees for its defense of the Illinois federal action constitutes "extraterritorial" application of Rule 4:42-9(a)(6). This is not a case in which Myron litigated the merits of the coverage issue in Illinois and then filed suit in New Jersey solely to collect counsel fees. Rather, after successfully fending off Atlantic's effort to litigate the coverage issue in Illinois, Myron litigated the merits of the coverage issue in New Jersey and obtained a favorable result. Its right to counsel fees stems from its success in the New Jersey litigation.
We also conclude that allowing Myron to recover fees for the Illinois litigation will best serve the important purposes of the Rule. We agree with Myron that, unless the insured can recover its counsel fees for out-of-state litigation in this situation, an insurer could wear down the insured financially through forum-shopping. In this case, there is no doubt that Atlantic filed its action in Illinois to take advantage of a favorable Seventh Circuit ruling on coverage. While this may have been good legal strategy from Atlantic's point of view, it imposed costs on Myron to fight its way out of what the Illinois court found was an inappropriate forum, and to get the case back into an appropriate venue.
Viewed in that light, Atlantic's two federal complaints can be seen as battles in a war that Myron ultimately won. Put another way, the Illinois litigation was an integral part of the entire controversy over coverage, and can fairly be characterized for purposes of Rule 4:42-9(a)(6) as part of the same "action" in which Myron prevailed. This interpretation is consistent with the purpose of the Rule. Requiring Myron to absorb the cost of the Illinois litigation would "dilute" Myron's right to obtain the benefits of the Atlantic policy without having to pay litigation expenses to establish coverage. Liberty, supra, 308 N.J.Super. at 406, 706 A.2d 206; Sears, supra, 134 N.J. at 356, 634 A.2d 74.
While there is no New Jersey case directly on point, we find support for our conclusion in cases from this State and other jurisdictions. In Westfield Centre Service, Inc. v. Cities Service Oil Co., 86 N.J. 453, 432 A.2d 48 (1981), the Court approved a state trial court's award of counsel fees under the Franchise Practice Act (FPA) for litigation in federal court. Plaintiff initially filed the lawsuit in New *1090 Jersey state court, but defendant removed the action to federal court, where the federal judge dismissed the complaint. Plaintiff re-filed its action in state court and obtained partial relief, entitling it to at least a portion of its counsel fees under the FPA. In concluding that fees should be awarded for the federal action, the trial court stated:
Defendant contends that this court has no jurisdiction to award counsel fees for the first [federal] action and that, in any event, that action was subsequently terminated favorably to defendant by way of summary judgment. On the total record, however, the court believes that to accept this contention would be to exalt form over substance.
In substance, then, plaintiffs commenced an action in this court. Defendant removed the action to federal court. That court apparently granted defendant summary judgment rather than permitting an amended complaint solely because the matter would have been remanded to this court under the abstention doctrine in any event. What actually occurred had exactly the same effect as if (1) the original action had not been removed by defendant, but rather had remained here, and plaintiffs had been granted leave to amend the complaint, or (2) [the federal court] had granted leave to amend and then remanded to this court. The court may presume that but for defendant's removal of the action to federal court, leave to amend would have been given....

The court therefore concludes that in substance the first and second suits, although procedurally separate, were in fact one and the same case. The only reason defendant obtained a "favorable" outcome on the first suit was because of the peculiar procedural history of the case. Plaintiffs' original technical error in the pleadings should not bar the recovery of all counsel fees for the federal suit. The court will therefore allow such counsel fees for that aspect of the case as would otherwise be allowable.
[Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co., 162 N.J.Super. 114, 127-28, 392 A.2d 243 (Ch.Div.1978) (emphasis added).]
We remanded the case to the trial court to recalculate the attorney fees. Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co., 172 N.J.Super. 196, 205, 411 A.2d 714 (App. Div.1980). After granting certification, the Supreme Court held that the fees for the state court action needed to be recalculated to reflect plaintiff's lack of success on certain issues, but agreed with the trial court's rationale in awarding fees for the federal court action. Westfield, supra, 86 N.J. at 472, 432 A.2d 48.
Significantly, in our Westfield opinion, we noted a similarity of purpose between the fee provision of the FPA and Rule 4:42-9(a)(6):
The legislative concern which led to the enactment of N.J.S.A. 56:10-10 authorizing counsel fees to a successful franchisee-plaintiff was based upon the disparity in bargaining power of the parties to most franchise agreements. Where such disparity exists the right to award counsel fees against the more powerful party is justifiable in an effort to maintain a reasonable balance between them. A similar concern brought about the adoption in September 1971 of R. 4:42-9(a)(6) permitting the award of counsel fees in favor of a successful claimant in an action on a liability or indemnity policy of insurance.
[Westfield, supra, 172 N.J.Super. at 203, 411 A.2d 714 (citations omitted).]
Other jurisdictions have permitted a successful plaintiff to recover fees for litigation in a different forum than the one in which the plaintiff ultimately obtained a favorable judgment on the merits of the *1091 action. Myron relies on Fluke Corp. v. Hartford Accident & Indemnity Co., 102 Wash.App. 237, 7 P.3d 825 (2000), aff'd, 145 Wash.2d 137, 34 P.3d 809, 816 (2001), a case remarkably similar to the one before us.
In Fluke the parties litigated in both California and Washington over whether a CGL policy written in Washington provided Fluke Corp. with coverage for a malicious prosecution lawsuit filed in California. The insurer, Hartford, filed a declaratory judgment action in California, which was dismissed in favor of Fluke's earlier-filed declaratory judgment action in Washington. Ultimately, the Washington court held that the policy provided Fluke with coverage for the California malicious prosecution suit. Like New Jersey, Washington permits an insured to recover fees if it prevails against its insurer in a coverage action. Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673, 681 (1991).
Rejecting Hartford's jurisdictional objection, the Washington appellate court affirmed the trial court's award to Fluke of counsel fees for litigating the California coverage action:
Hartford challenges the award to the extent that it includes fees Fluke incurred defending against a declaratory action Hartford filed in California. Hartford's California lawsuit raised the same coverage issues as the Washington suit that gave rise to this appeal. Fluke's attorneys in California obtained dismissal of Hartford's action in favor of the first-filed Washington suit....
Hartford asserts, citing federal cases, that a Washington court may not award fees incurred by Fluke in another jurisdiction.... Under Olympic Steamship, Fluke is entitled to recover fees for legal action the insured is compelled to assume to obtain the full benefit of promised coverage. In support of its award of attorney fees, the trial court found that the fees billed to Fluke, including the fees of the California attorneys, were reasonable and "were necessarily incurred in an effort to establish insurance coverage in this litigation." The finding of necessity, unchallenged by Hartford on appeal, adequately justifies including the California attorney fees in the Olympic Steamship award. We affirm the trial court's award of attorney fees to Fluke.
[Fluke, supra, 7 P.3d at 834-35 (citations omitted).]
The Washington Supreme Court affirmed the coverage determination and the award of counsel fees. Fluke, supra, 34 P.3d at 816.
In litigation to enforce alimony awarded in a Colorado divorce, Gann v. Gann, 616 P.2d 1000, 1001 (Colo.Ct.App.1980), the court held that a wife could recover counsel fees in the Colorado action for a lawsuit she filed in California after the husband moved to California and refused to pay alimony. Rejecting claims that the Colorado court lacked jurisdiction to award fees for the out-of-state litigation, the court reasoned:
Here, the California litigation was not separate and distinct from the divorce action and subsequent proceedings to enforce plaintiff's right to arrearages in the alimony payments. The California action was begun solely to enforce the judgments obtained in Colorado and was necessitated by husband's own action in leaving this jurisdiction.
[Id. at 1001.]
See also In re Marriage of Ward, 183 P.3d 707, 709 (Colo.Ct.App.2008); Bursum v. Bursum, 136 N.M. 584, 102 P.3d 651, 655 (Ct.App.), cert. denied, 137 N.M. 290, 110 P.3d 506 (2005).
In Stathos v. Bowden, 728 F.2d 15 (1st Cir.1984), a case similar to Westfield, supra, *1092 a federal court awarded fees to the plaintiff for state court litigation related to her federal sex discrimination suit:
[D]efendants argue that the court should not have included 38.5 hours that plaintiffs' attorneys needed to defend a state declaratory judgment action that [defendants] brought against them once it learned that they intended to sue [defendants] in federal court. The issues in the state suit were virtually the same as in the federal case. Defendants appeared to have filed it in order to preempt the federal action. And plaintiffs were forced to defend it lest they lose their § 1983 claim in the federal courts through collateral estoppel. Defense of the state court action was a necessary part of plaintiffs' efforts to achieve their § 1983 goal. It formed part of an "action ... to enforce a provision of sections ... 1983 [and] 1985...," 42 U.S.C. § 1988, and plaintiffs thus can recover attorney's fees.
[Id. at 22 (citations omitted).]
We conclude that Westfield, as well as Fluke and the other out-of-state cases cited here, strongly support our conclusion that Myron is entitled to counsel fees for litigating the Illinois federal actions.
Finally, we address Atlantic's claim that Myron was not a "successful claimant" under Rule 4:42-9(a)(6). Citing Transamerica Insurance Co. v. National Roofing, Inc., 108 N.J. 59, 527 A.2d 864 (1987), Atlantic contends that Myron was not a successful litigant in the Illinois actions because those courts did not adjudicate the merits of the coverage claim.
Transamerica did hold that the trial court's findingthat a declaratory judgment action seeking coverage was moot due to the settlement of the underlying liability casedid not render the insured a "successful claimant." However, more significantly, the Court remanded the matter to the trial court to decide the coverage issue, with direction that if there was coverage, the insured would be entitled to the fees it had spent on litigating the declaratory judgment action. Id. at 65, 527 A.2d 864. We read Transamerica as precluding an award of counsel fees until the insured obtains a favorable determination on the coverage issue. We do not read Transamerica as precluding an award of counsel fees for the Illinois litigation, after Myron prevailed on the coverage issue in the New Jersey action.
Because we conclude that Myron was entitled to counsel fees under Rule 4:42-9(a)(6) for the Illinois declaratory judgment litigation, we remand this case to the trial court to determine the amount of the fee award.
Reversed and remanded.
NOTES
[1] Additional TCPA suits were later filed against Myron in other states, including South Carolina and New Jersey. The New Jersey lawsuit, Appraisal Consultants Corp. v. Myron Corp., Docket No. DC-13858-04, was filed in Bergen County.
[2] Am. States Ins. Co. v. Capital Assoc. of Jackson County, Inc., 392 F.3d 939 (7th Cir.2004). The federal court there was sitting in diversity and acknowledged that "although Illinois law supplies the rule of decision, we have not cited any Illinois case interpreting the scope of `privacy' coverage under an advertising-injury clause. That is because Illinois has not issued any pertinent decision at any level (trial or appellate)." Id. at 943. Thereafter, however, the Illinois Supreme Court issued a decision finding coverage on state law grounds for TCPA claims. Valley Forge Ins. Co. v. Swiderski Electronics, Inc., 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307 (2006).
[3] We are not called upon here to decide the merits of the underlying coverage decision. However, the trial judge's thoughtful discussion of the issue in a sixteen-page written opinion thoroughly vindicates the Illinois federal judge's view that the parties could obtain a determination of their dispute in the courts of New Jersey.