39 A.3d 930 (2012)
425 N.J. Super. 82
Regina LITTLE, on behalf of herself and all others similarly situated, Plaintiff-Respondent,
v.
KIA MOTORS AMERICA, INC., Defendant-Appellant.
Docket No. A-0407-11T3
Superior Court of New Jersey, Appellate Division.
Argued March 14, 2012.
Decided April 2, 2012.
*931 Roberto A. Rivera-Soto argued the cause for appellant (Ballard Spahr, LLP, attorneys; Mr. Rivera-Soto, John B. Kearney, Neal Walters, and Michael R. Carroll, Cherry Hill, on the briefs).
Lisa J. Rodriguez argued the cause for respondent (Trujillo Rodriguez & Richards, LLC, attorneys; Ms. Rodriguez and Nicole M. Acchione, Haddonfield, on the brief).
Before Judges CUFF, LIHOTZ, and WAUGH.
The opinion of the court was delivered by
WAUGH, J.A.D.
On leave granted, defendant Kia Motors America (Kia) appeals from the August 12, 2011 order of the Law Division, which adopted the report of a special master, vacated a portion of the jury's verdict on damages, ordered re-noticing of the class, modified the existing claims procedure, and reserved to the special master the option of considering an award of nominal damages. We reverse and remand.

I.
We discern the following facts and procedural history from the record on appeal.
In 2001, Regina Little sued Kia, alleging that the Kia Sephia she purchased was defective because its design caused repetitive, premature wear of the car's brakes and brake rotors. Little's claims included violation of the New Jersey Consumer *932 Fraud Act (CFA), N.J.S.A. 56:8-1 to -106, breach of implied warranties of merchantability and an express warranty that the Sephia was free of defects, and violation of the Magnuson-Moss Warranty Improvement Act, 15 U.S.C.A. § 2310(d)(1).
In 2003, Little sought certification of her complaint as a class action pursuant to Rule 4:32. The motion was granted and the members of the class, New Jersey residents who purchased Sephias between 1997 and 2000, were notified of the action.
In June 2008, the matter was tried before a jury. The jury found that Kia did not violate the CFA. However, it found that Kia had breached its express and implied warranties, and had also violated the Magnuson-Moss Warranty Act. At Little's request, the jury verdict form with respect to damages for breach of warranty instructed the jury that it could find (1) that "each class member" suffered damages for the diminution in value of the vehicle, (2) that "each class member" suffered damages for repair expenses, or (3) both. The jury found that the class members suffered no diminution in value between the Sephia as warranted and as delivered, but that each class member suffered $750 in repair expenses.
In November 2008, Kia moved for post-verdict relief, including a new trial on the issue of repair damages and class decertification for the purposes of determining the amount of repair damages, if any, suffered by each member. We note that Little did not move for a new trial with respect to the jury's verdict that the class members had not suffered a diminution in value arising from the breach of warranty. See R. 2:10-1 ("In both civil and criminal actions, the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court.").
The trial judge granted Kia's motion on the issue of repair damages. However, she based the decision on her conclusion that she should not have put the issue of repair damages before the jury on a class-wide basis because each owner's repair costs would be different. She decertified the class for the purpose of implementing her determination that each class member's damages had to be determined individually.
The judge explicitly limited the scope of the new trial:
A new trial will be granted as to the individual damages suffered by each class member. . . . To be clear, the only issue in this new trial will be the monetary amount of damages incurred, if any, and not whether the car suffered from a defective braking system, whether there was a breach of warranty, whether there was notice, or whether there was an opportunity to cure, all of which has been proven on a class-wide basis. The new trial will be handled on a claim-form basis.
She explained her reasons as follows:
Plaintiff had two theories of damages: (1) diminution of value due to a defective braking system, and (2) the costs to the individual owners for repair to the brake system. The jury rejected the first theory, but not the second. An examination of the evidence shows ample support for the jury's verdict in all respects but damages.[1]
. . . .

*933 The jury determined that Plaintiff had not proven a diminution in value of the Kia automobiles. Such a finding would result in damage throughout the class. The jury instead determined that class members suffered losses of $750 due to the defective braking system. This court is convinced this finding was based upon an erroneous submission by the court of the jury question and accompanying instructions. The damages suffered by each class member are dependent on numerous variables, such as brake life, frequency of repair, driving habits and length of time the car was owned. These damages cannot be ascertained on a class-wide basis, and the court's decision to submit same to the jury was error.
In April 2009, Little sought approval of a proposed notice and claim form to be sent to the class in implementation of the trial judge's decision that repair costs should be determined individually. In her proposal, Little argued that each claim submitted by a class member that met certain requirements should be presumptively valid. The application was heard by a new judge, due to the reassignment of the trial judge. The new judge rejected that aspect of the proposed form, citing the prior judge's order.
The second judge required Little to add additional questions to the form with respect to the condition of each claimant's Sephia and the details concerning any repairs made by each claimant, with available documentation to be attached. The judge ordered Kia to pay for "the dissemination of class notice and administration of the class members' claims." Although Kia provided approximately 8000 class members with the notice and claim form, between 1100 and 1200 class members submitted claim forms.
In October 2010, the parties appeared for a case management conference before the second judge. At the hearing, class counsel informed the judge that they could no longer represent individual claimants because such representation would conflict with the representation of the overall class. The judge ordered the parties to brief the issue of whether the class could be recertified for the purposes of resolving the representation issue.
In January 2011, the second judge determined that "the class should be recertified so that the individual claims for damages can be brought before the court." She subsequently recertified the individuals who responded to the claims notice as the new class. In an order filed January 25, the judge referred the claims to a special master, pursuant to Rule 4:41-1, in order to determine "which [claim] forms state valid claims to be paid." Little moved for leave to appeal the second judge's January 25, 2011 order. We denied her motion.
In June 2011, the special master advised the second judge that he had determined "that the jury verdict finding no diminution in value cannot logically survive." He cited law for the proposition that "a new trial on damages necessarily opens the door for all claims and theories, even those not previously raised at the prior trial." In addition, the special master wrote:
Whether based upon counsel's argument or whether my conclusions that the "clean slate" has empowered me to revisit this theory is of no practical significance.
Accordingly, the fact that the jury returned a verdict finding no diminution of value is not dispositive, and is fully consistent with and complimentary to allowing individual class members to prove that they incurred additional individual damages as a result of Kia's failure *934 to repair the defective brakes. Each claimant may claim damages for breach of warranty as well as for any individual out-of-pocket damages suffered.
The special master recommended that a new notice and claim form be sent to the class, explaining his reasons as follows:
[W]hile the class was re-certified after the claim form was issued, the class members were never made aware of the de-certification. Given [the judge's] recertification, and my determination/recommendation that class members may seek damages for breach of warranty claims and are not limited to out-of-pocket expenses, I see no alternative but to require new notices.
Finally, the special master observed that "nominal damages may be appropriate in a situation where a plaintiff fails to come forward with sufficient evidence to enable a finder of fact to estimate the amount of money that would fairly compensate the plaintiff for his loss."
In July 2011, Kia objected to the special master's recommendations pursuant to Rule 4:41-5(b), particularly the recommendation concerning rejection of the jury's verdict finding of no diminution in value, rejection of the trial judge's November 2008 order granting a new trial, the recommendation for dissemination of an additional notice and claim forms, and the recommendation that nominal damages be considered. Kia also asserted that, if the special master's recommendations were adopted, it would be "entitled to have the new trial decided by a jury."
The second judge heard oral argument regarding Kia's objections on August 12, 2011. The judge adopted the special master's recommendations over Kia's objections and referred the matter "back to the special master for adjudication."
In adopting the special master's recommendations, the second judge stated:
You know, the problem I think in this case is that the court is unable to really know what happened in the jury room. Nor is the court able to with any clarity determine what [the trial judge] was setting aside or was not setting aside. . . .
. . . .
The only thing I'm more convinced about today after these oral arguments than ever before is that no one knows, [the trial judge] didn't know, we don't know, and counsel doesn't know what happened there in the jury room. Nor do we know what was the intent of [the trial judge] in reversing the jury verdict and decertifying the class. We can't be sure whether she really meant to technically decertify the class or just meant to set aside part of the jury verdict. We really can't be sure.
The judge accepted the special master's reasons for his recommendations.
The second judge reviewed the law with respect to setting aside a jury verdict, noting that
the New Jersey Supreme Court has cautioned that a trial court considering vacating a jury verdict on its own motion should [not] do so lightly. The court has noted that the jury verdict is entitled to very considerable respect and should not be overthrown except on the basis of a carefully reasoned and factually supported and articulated determination after canvassing the record and weighing the evidence that the continued viability of the judgment would constitute manifest denial of justice involves a pervading sense of wrongness which can arise from the manifest lack of inherently credible evidence to support the finding. See Risko v. Thompson Muller *935 [Auto. Grp., 206 N.J. 506, 20 A.3d 1123 (2011)].
[(Emphasis added.)]
However, the judge had already conceded during oral argument that, "candidly, I didn't review the trial transcript."
Kia moved for leave to appeal. On September 22, we granted Kia's motion. Little moved for leave to cross-appeal, which we denied in October 2011.

II.
On appeal, Kia argues that the second judge erred by disregarding the trial judge's prior orders and granting a new trial as to all damage issues, including the possibility of nominal damages.
It is well-established that our review of a trial judge's conclusions of law is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."); Washington Commons, LLC v. City of Jersey City, 416 N.J.Super. 555, 560, 7 A.3d 225 (App.Div.2010) (A trial court's "interpretation of court rules is also subject to de novo review." (citing Myron Corp. v. Atl. Mut. Ins. Corp., 407 N.J.Super. 302, 309, 970 A.2d 1083 (App.Div.2009), aff'd o.b., 203 N.J. 537, 4 A.3d 999 (2010))), certif. denied, 205 N.J. 318, 15 A.3d 326 (2011).
In this case, the special master made no factual determinations with respect to damages. Instead, he recommended a new legal approach on damages.[2] Consequently, we are reviewing only the decision made by the judge. In any event, we note that we owe no deference to the legal conclusions of a special master. See Abbott ex rel. Abbott v. Burke (Abbott XX), 199 N.J. 140, 146 n. 2, 971 A.2d 989 (2009) (quoting State v. Chun, 194 N.J. 54, 93, 943 A.2d 114 (2008)).
The trial judge considered and set aside only one aspect of the jury's damages verdict, concluding that she should not have allowed the jury to determine the issue of repair costs on a class-wide basis. She determined that those damages had to be determined on an individual basis given the disparity of repair experience among class members. The trial judge then outlined a claims-based procedure for determining repair damages on an individual basis. That procedure was implemented by the second judge, and we denied Little's motion for leave to appeal that implementation. Almost three years later, the second judge set aside other aspects of the jury's damages verdict, largely adopting the special master's view that the damages slate was wiped clean. We reverse because the judge failed to articulate a sufficient basis for her actions.
Rule 4:49-1(a) allows the trial judge to grant a new trial "as to . . . part of the issues." "Where clearly separable, [a] new trial may be limited to less than all components of damages.. . ." Pressler & Verniero, Current N.J. Court Rules, comment 2.1 on R. 4:49-1 (2012) (citations omitted). Although such situations "typically involve punitive damages," ibid., we have remanded for limited damages trials in other contexts. For example, in Padilla v. Berkeley Educational Services, 383 N.J.Super. 177, 184, 891 A.2d 616 (App.Div.2005), we remanded for consideration of emotional damages, but not economic damages, because *936 the jury had rejected a claim of constructive discharge.
Here, the trial judge clearly delineated the specific damages award she was setting aside, repair costs, and the parameters of an individual claims process to address them. There was nothing in her ruling or her explanation of it to suggest that she had intended to wipe the damages' slate clean. As we have already observed, the portion of the jury's verdict finding no diminution in value was not even before the trial judge.
The trial judge's legal rulings, in which the second judge had previously concurred, had been the law of the case for several yearsfrom November 2008, when the trial judge vacated the jury's class-wide award on repair damages, to August 2011, when the second judge adopted the special master's recommendations. "Under the law-of-the-case doctrine, decisions of law made in a case should be respected by all other lower or equal courts during the pendency of that case." Lanzet v. Greenberg, 126 N.J. 168, 192, 594 A.2d 1309 (1991) (citing State v. Reldan, 100 N.J. 187, 203, 495 A.2d 76 (1985); State v. Hale, 127 N.J.Super. 407, 410-11, 317 A.2d 731 (App.Div.1974)). This doctrine prohibits "a second judge on the same level, in the absence of additional developments or proofs, from differing with an earlier ruling." Hart v. City of Jersey City, 308 N.J.Super. 487, 497, 706 A.2d 256 (App. Div.1998). It is a non-binding rule intended "to prevent relitigation of a previously resolved issue." In re Estate of Stockdale, 196 N.J. 275, 311, 953 A.2d 454 (2008) (citing Pressler, Current N.J. Court Rules, comment 4 on R. 1:36-3 (2008)). "A hallmark of the law of the case doctrine is its discretionary nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those `factors that bear on the pursuit of justice and, particularly, the search for truth.'" Hart, supra, 308 N.J.Super. at 498, 706 A.2d 256 (quoting Reldan, supra, 100 N.J. at 205, 495 A.2d 76).
Our review of the record convinces us that the second judge, who was by her own concession not familiar with the trial record, failed to give appropriate deference to the decisions of the judge who actually tried the case and decided the post-verdict motions. She did not articulate "`factors that bear on the pursuit of justice and, particularly, the search for truth'" in departing from the trial judge's rulings, which had been acted and relied upon by the parties during the intervening years. Ibid.
In addition, in vacating that aspect of the jury's verdict finding no diminution in value, the second judge did not comply with the well-established legal requirements for reaching such a decision. Rule 4:49-1(a) provides that a trial judge shall grant a new trial if, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." A jury verdict should be set aside "only in cases of clear injustice." Boryszewski v. Burke, 380 N.J.Super. 361, 391, 882 A.2d 410 (App.Div.2005) (citing Crego v. Carp, 295 N.J.Super. 565, 577, 685 A.2d 950 (App.Div.1996), certif. denied, 149 N.J. 34, 692 A.2d 48 (1997)), certif. denied, 186 N.J. 242, 892 A.2d 1288 (2006).
A judge may not vacate a jury verdict unless she determines "that the continued viability of the judgment would constitute a manifest denial of justice." Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98, 379 A.2d 225 (1977). Such a determination must be "carefully reasoned and factually supported (and articulated)," and *937 may be made only after the judge has "canvass[ed] the record and weigh[ed] the evidence." Ibid. Significantly for the purposes of this appeal,
before a second trial judge can vacate an order of another trial judge on the same set of facts [she] must determine whether or not the first trial judge's action "was without basis in law or fact, or both, with the result that there was a denial of justice under the law."
[Clarkson v. Kelly, 49 N.J.Super. 10, 18, 138 A.2d 747 (App.Div.1958) (quoting Hartpence v. Grouleff, 15 N.J. 545, 548, 105 A.2d 514 (1954)).]
Here, the second judge was not the trial judge. Consequently, we are not required to "afford due deference to [her] feel of the case, with regard to the assessment of intangibles, such as witness credibility." See Jastram v. Kruse, 197 N.J. 216, 230, 962 A.2d 503 (2008) (citation and internal quotation marks omitted). And, as already noted, the second judge "candidly" conceded that she "didn't review the trial transcript." Having failed to "canvass[] the record and weigh[] the evidence," the second judge simply could not have rendered a decision that was "carefully reasoned and factually supported (and articulated)." Baxter, supra, 74 N.J. at 597-98, 379 A.2d 225. We find that she did not, in fact, do so.
For the reasons stated, we reverse the Law Division's August 12, 2011 order and remand for further proceedings consistent with this opinion.
NOTES
[1] At the time, the only damages issue before the trial judge related to the repair damages. We do not understand the trial judge to have meant that the jury's finding that there was no diminution in value was not supported by the evidence.
[2] Although it appears to us that the special master went beyond the scope of his appointment, which is precluded by Rule 4:41-3, we note that the second judge concluded that he had not done so.